# United States Court of Appeals
## For the First Circuit

No. 03-2496

UNITED STATES OF AMERICA,

Appellee,

v.

IMAURI IVERY,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Dyk[*],
Circuit Judges.

Catherine K. Byrne for appellant Ivery.
Donald L. Cabell, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

October 20, 2005

[*]Of the Federal Circuit, sitting by designation.

**DYK, Circuit Judge.** Defendant-appellant Imauri Ivery ("Ivery") pleaded guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and was sentenced to 180 months in prison under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The plea was conditioned on Ivery's retention of the right to appeal the denial of his motion to suppress a firearm and ammunition police recovered while searching Ivery's vehicle during a traffic stop. Fed. R. Crim. P. 11(a)(2) (2005). In addition to appealing the denial of the motion to suppress, Ivery challenges the district court's enhancement of his sentence under the ACCA. We affirm.

## I.

The primary question here goes to the scope of permissible police authority under Terry v. Ohio, 392 U.S. 1 (1968).

The facts found by the district court are as follows: Around 6:00 AM on August 11, 2002, Boston city police officer Grant Callender was on duty in Boston's Chinatown, an area known for drug-related crime, when he observed Ivery driving a white Mercedes with no front license plate and a partially detached rear license plate. Callender pulled Ivery over two blocks later, where he was joined by officer Kevin Ervin. While approaching Ivery's vehicle (Callender from the rear and Ervin from the front), the officers noticed that Ivery was leaning to the right; that Ivery's glove

-2-

compartment was open, revealing "a box of ... plastic sandwich bags sticking out from the glove box[;]"; and that both front seats of Ivery's car were fully reclined, obscuring the car's rear floorboard.

Still standing near the Mercedes with Ivery inside, Ervin told Callender that he recognized Ivery as a person who had previously fled from police. Hearing this, Ivery interjected "I don't run from the police" in a "quivering" voice. Both officers said that Ivery appeared nervous; Callender noted that Ivery was "actually shaking ... his hands were shaking." After this verbal exchange, Callender instructed Ivery to exit the car, frisked him, found nothing, and then directed Ivery to the rear of the car where Ervin was standing. Callender next "frisked" the inside of the Mercedes, searching the front and rear compartments, floorboards, and finally behind an armrest in the center of the rear seat-back, where he found a loaded pistol. When Callender emerged, Ivery unsuccessfully attempted to flee and was placed under arrest.

On December 4, 2002, Ivery was indicted in one count for unlawful possession of a firearm and ammunition by a person previously convicted of a crime punishable by imprisonment for one year or more in violation of 18 U.S.C. § 922(g)(1). Ivery moved to suppress the pistol and ammunition on Fourth Amendment grounds, arguing that they were obtained through an illegal search of the Mercedes. After an evidentiary hearing, the district court denied

Ivery's motion.

Relying on the officers' observations of the character of the neighborhood, Ivery's nervousness, his possession of the suspicious plastic bags, and his concealment of the car's rear floorboard, the district court concluded that the officers' search was permissible under Terry, based on their "observations of the vehicle [and of] Mr. Ivery."

While the district court credited Ervin's testimony that he recognized Ivery as someone who had previously run from police, the district court did not rely on this testimony. The district court neither credited nor relied on Ervin's testimony that during the traffic stop officer Chris Hamilton informed Ervin by telephone that "there was a white Mercedes that frequents ... the Chinatown area" whose driver "had assaulted an officer." Ivery entered a conditional guilty plea to the sole count in the indictment on July 2, 2003.

Ivery stipulated at sentencing that he had three earlier convictions for "serious drug offense[s]" within the meaning of 18 U.S.C. § 924(e). This led the district court to calculate Ivery's sentence under the ACCA. The district court sentenced Ivery to 180 months in prison (the minimum sentence required by the ACCA), followed by 60 months of supervised release, and imposed a $100 statutory assessment. Though the district court made a calculation of Ivery's sentence pursuant to the federal Sentencing Guidelines,

ultimately the length of Ivery's sentence was determined by application of the ACCA, not the federal Sentencing Guidelines. Thus there was no Booker error. See United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), United States v. Antonakopoulos, 399 F.3d 68, 76 (1st Cir. 2005) ("The error under Booker is ... that the defendant was sentenced under a mandatory Guidelines system.").

## II.

In Terry, the Supreme Court held that police "may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry, 392 U.S. at 22. We conduct a two-part inquiry to determine whether a search complies with Terry. First, we evaluate whether the officers' initial interference with the defendant was justified; second, we ask whether the ensuing search was "reasonably related in scope to the circumstances which justified the officers' initial interference." United States v. Nee, 261 F.3d 79, 83 (1st Cir. 2001) (citing Terry, 392 U.S. at 19-20). A search is "reasonable" under the second part of this test where a law enforcement officer "conduct[s] a patdown to find weapons that he reasonably believes or suspects are then in the possession of the person he has accosted." Ybarra v. Illinois, 444 U.S. 85, 93 (1979). Vehicle searches are also permissible where officers "possess[] a

-5-

reasonable belief based on 'specific and articulable facts which ... reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of ... weapons" in the vehicle. Michigan v. Long, 463 U.S. 1032, 1049 (1982) (quoting Terry, 392 U.S. at 21). Here, the legitimacy of the traffic stop is undisputed, so the first part of the Terry test is satisfied. Thus the only issue on appeal is whether searching the car was permissible under the circumstances. See Nee, 261 F.3d at 83; United States v. Lott, 870 F.2d 778, 784 (1st Cir. 1989).

In United States v. Lott, we held that the second part of the Terry test imposes a dual requirement for a permissible warrantless search for weapons: (1) the officers must have actually harbored a suspicion that the suspect was armed; and (2) that suspicion must have been reasonable under the circumstances. See Lott, 870 F.2d at 783-84. Here, the district court credited Callender's and Ervin's testimony that they frisked Ivery and searched his car based on their observations of the circumstances and Ivery's conduct. In crediting this testimony, the district court also evidently concluded that the officers testified credibly that they actually feared for their safety based on these observations. Ivery contends that one of the professed factual bases for the officers' concern -- Hamilton's statement to Ervin about a white Mercedes in the Chinatown area whose driver had assaulted an officer -- was discredited, so that it was error for

-6-

the district court to rely on the officers' remaining testimony. Ivery thus insists that the district court's finding that the officers actually feared for their safety lacked a proper factual predicate. We disagree.

Whether the officers actually feared for their safety is a question of fact. On appeal from disposition of a motion to suppress, we review the district court's findings of fact only for clear error. United States v. Pardue, 385 F.3d 101, 104 (1st Cir. 2004) (citing United States v. Maguire, 359 F.3d 71, 76 (1st Cir. 2004)); United States v. Watson, 76 F.3d 4, 6 (1st Cir. 1996). "Where evaluations of witnesses' credibility are concerned, we are especially deferential to the district court's judgment; we may overturn its decision only if, after reviewing all of the evidence, we have a 'definite and firm conviction that a mistake has been committed.'" United States v. Jones, 187 F.3d 210, 214 (1st Cir. 1999). We have no such conviction here, and thus no reason to disturb the district court's factual findings. The fact that the district court disbelieved one part of the officers' testimony but credited other parts does not render suspect the district court's credibility finding. Thus, we conclude that the district court did not commit clear error in finding that the officers actually feared for their safety.[1] Having concluded that Lott's actual suspicion

---

[1]     Ivery makes a related claim -- that the officers' professed safety concerns were based solely on the discredited testimony about the phone call from Hamilton. We disagree. Both

requirement is satisfied here, we decline the government's invitation to reconsider the continuing validity of that aspect of Lott in light of the Supreme Court's holding in United States v. Whren, 517 U.S. 806 (1996).[2]

The district court also concluded, as indicated by its reference to Terry, that Callender's and Ervin's suspicions were reasonable under the circumstances. Ivery challenges this conclusion as well. The district court's reasonableness determination is a decision of law based on factual findings. We review the legal determination of reasonableness de novo. Pardue, 385 F.3d at 104; Maguire, 359 F.3d at 76. We are mindful that "[t]he circumstances under which the officers acted 'are to be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" United States v. Trullo, 809 F.2d 108, 112 (1st Cir. 1987) (quoting United States v. Hall, 525 F.2d 857, 859 (D.C. Cir. 1976)).

The district court relied on four features of the situation at the time of the search to conclude that the officers' suspicion was reasonable: (1) Ivery's presence in a high-crime

Callender and Ervin clearly testified that their suspicions were provoked primarily by their observations of Ivery.

[2] In Whren, the Supreme Court concluded that precedent "foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." Whren, 517 U.S. at 813. We have previously declined an invitation to address Whren's effect on Lott. See Nee, 261 F.3d at 85.

neighborhood; (2) Ivery's nervousness; (3) Ivery's concealment of the car's rear floorboard; and (4) Ivery's possession of objects suggesting illegal conduct. We have previously found circumstances similar to each of these features relevant to determining reasonable suspicion. See, e.g., Trullo, 809 F.2d at 111-12 (finding "the characteristics of the area in which [officers] encounter a vehicle" relevant to reasonableness of suspicion); United States v. Gilliard, 847 F.2d 21, 25 (1st Cir. 1988) (finding suspect's nervousness relevant); United States v. Stanley, 915 F.2d 54, 56 (1st Cir. 1990) (concluding that defendant's nervous movements and apparent attempt to conceal something supported reasonable suspicion); United States v. Cook, 277 F.3d 82, 86-87 (1st Cir. 2002) (officers' observation that defendant "appeared to be secreting some object in his pants or in the [car] seat beneath him" supported reasonable suspicion); United States v. Moore, 235 F.3d 700, 704 (1st Cir. 2000) (concluding suspicion was reasonable where officers observed both defendant "clench[ing] his hand in a manner indicating that he was attempting to hide something" and a number of plastic bags in apartment building consistent with drug trafficking).

Though Ivery is correct that any one of these features, standing alone, may be insufficient to support reasonable suspicion, we have repeatedly held that when evaluating the validity of a Terry stop, we "must consider all of the relevant

circumstances . . . which 'are not to be dissected and viewed singly; rather they must be considered as a whole.'" Gilliard, 847 F.2d at 24-25; see Lott, 870 F.2d at 783; Trullo, 809 F.2d at 111. No case has been brought to our attention holding that circumstances similar to those surrounding the search of Ivery's car, when viewed as a whole, were insufficient to justify a Terry search.

The only authority that comes close to supporting Ivery's position is Trullo, in which we observed that our finding of reasonable suspicion "represent[ed] the outermost reach of a permissible Terry stop." Trullo, 809 F.2d at 111. There, this court upheld the district court's denial of a suppression motion where narcotics officers conducted a Terry stop based on their observations of a suspect in a high-crime neighborhood engaging in several short conversations that, in their experience, were "indicative of some sort of illegal transaction." Id. at 110-12. The court noted that the permissibility of the Terry stop was a "close" question on the facts of Trullo. Id. at 109. If Trullo was a close case, this one is not. In addition to the high-crime location and nervous behavior, here Ivery was found in possession of objects suggesting illegal conduct and behaved in a manner that led the officers to believe he was concealing something.

Viewing the totality of the circumstances from the perspective of experienced police officers, we conclude that

Callender and Ervin had a reasonable basis for suspecting that Ivery might be armed, and thus that their search of Ivery's car was valid under Terry.

### III.

We next address Ivery's Sixth Amendment challenge to the district court's use of Ivery's prior convictions to enhance his sentence under the ACCA. The ACCA enhances the sentence for a violation of 18 U.S.C. § 922(g)(1) to a minimum 15-year term of imprisonment when the defendant has "three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another. . . ." 18 U.S.C. § 924(e)(1) (2000). At sentencing before the district court, Ivery stipulated to three prior convictions sufficient to require a minimum 15 year prison term under the ACCA.

On appeal, Ivery argues for the first time that the government's failure to prove the facts of his prior convictions to a jury beyond a reasonable doubt violated his Sixth Amendment rights. The question here is whether the district court erred in relying on Ivery's stipulations, rather than a jury finding, to establish the existence of the prior convictions for ACCA purposes. Ivery did not present his Sixth Amendment argument to the district court. Thus, we review the district court's sentencing determination for plain error. United States v. Colon-Munoz, 192 F.3d 210, 221 (1st Cir. 1999), cert. denied 529 U.S. 1055 (2000).

-11-

Ivery relies on <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000), and <u>Blakely</u> v. <u>Washington</u>, 542 U.S. 296 (2004), in his first supplemental brief, and <u>United States</u> v. <u>Booker</u> in his second supplemental brief. None of these cases supports Ivery's position. In <u>Apprendi</u>, the Supreme Court held that "[<u>o]ther than the fact of a prior conviction</u>, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). <u>Apprendi</u>'s explicit exemption of sentence enhancements based on prior criminal convictions from the scope of its constitutional holding left intact the Supreme Court's earlier decision in <u>Almendarez-Torres</u> v. <u>United States</u>, 523 U.S. 224 (1998). There, the Court endorsed treating prior convictions as sentencing factors rather than elements of federal criminal offenses. See <u>Almendarez-Torres</u>, 523 U.S. at 226-27, 247. "We have ruled with a regularity bordering on the monotonous that, given the explicit exception and force of <u>Almendarez-Torres</u>, the rationale of <u>Apprendi</u> does not apply to sentence-enhancement provisions based upon prior criminal convictions." <u>United States</u> v. <u>Moore</u>, 286 F.3d 47, 51 (1st Cir. 2002). Nothing in <u>Blakely</u> or <u>Booker</u> alters the continuing vitality of the <u>Almendarez-Torres</u> exception to <u>Apprendi</u>.

<u>Blakely</u> relied on <u>Apprendi</u> to invalidate a state statutory sentencing scheme and reasserted <u>Apprendi</u>'s admonition

that the Sixth Amendment requires proof to a jury of all facts affecting punishment "other than the fact of a prior conviction." 542 U.S. at ___, 124 S. Ct. at 2536 (quoting Apprendi, 530 U.S. at 490). The Booker Court, applying Apprendi to hold the federal Sentencing Guidelines constitutionally invalid to the extent that they are mandatory, also took care to leave the "prior conviction" exception intact. Booker, 543 U.S. at ___, 125 S. Ct. at 756 (requiring proof to a jury of "[a]ny fact (other than a prior conviction)" that supports a sentencing enhancement).

The Supreme Court addressed the scope of the prior conviction exception in United States v. Shepard, ___ U.S. ___, 125 S. Ct. 1254 (2005), holding that the Sixth Amendment limits judicial fact-finding to resolve disputed issues. Even where there are disputes concerning prior convictions, a jury trial is not required when the ACCA predicate question can be resolved by "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Shepard, ___ U.S. at ___, 125 S. Ct. at 1263. Here, Ivery did not and does not now dispute the facts of his prior convictions or their sufficiency as ACCA predicate offenses. See Shepard, ___ U.S. at ___, 125 S. Ct. at 1262-63 (emphasizing that its holding only "limit[s] the scope of judicial factfinding on the disputed ... character of a

prior plea" undertaken to determine ACCA applicability) (emphasis added).

Ivery insists, relying on Justice Thomas's concurrence in Shepard, that Almendarez-Torres is inconsistent with Apprendi and Booker. See Shepard, ___ U.S. at ___, 125 S. Ct. at 1264 (Thomas, J., concurring) (advising that "in an appropriate case, this Court should consider Almendarez-Torres' continuing viability"). We disagree. The Shepard majority noted the possibility that Apprendi may eventually be extended to require proof of prior convictions to a jury, but cautioned that this "is up to the future to show." See id., ___ U.S. at ___, 125 S. Ct. at 1263 n.5. As noted above, both Blakely and Booker recognized the continued viability of the Almendarez-Torres exception. It is not our place to anticipate the Supreme Court's reconsideration of its prior rulings; thus Almendarez-Torres remains binding law that we must apply until overruled by a majority of the Supreme Court. State Oil Co. V. Kahn, 522 U.S. 3, 20 (1997); see also Figueroa v. Rivera, 147 F.3d 77, 81 (1st Cir. 1998). The district court did not err in sentencing Ivery under the ACCA on the basis of prior convictions established by stipulation rather than jury findings.

Affirmed.