**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 05-2505

UNITED STATES OF AMERICA,

Appellee,

v.

WAWA BELL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Cyr, Senior Circuit Judge.

Jeffrey S. Levin, Assistant Federal Public Defender, for appellant.
Aixa Maldonado-Quiñones, Assistant United States Attorney, with whom Thomas P. Colantuono, United States Attorney, was on brief for appellee.

September 15, 2006

**CYR**, **Senior Circuit Judge**.    At 5 p.m. on February 3, 2004, New Hampshire State Trooper Greg Ferry observed appellant Wawa Bell's vehicle, with its four-way flashers blinking, parked in the breakdown lane of Highway I-93 in Salem, Massachusetts. Trooper Ferry pulled his cruiser behind Bell's vehicle to offer assistance.  Approaching the driver's side window, Trooper Ferry observed that Bell was sleeping, and tapped on the rolled-up window.  Bell awakened, rolled the window all the way down, and informed Trooper Ferry that his car had broken down.  Bell declined assistance from Trooper Ferry, however, stating that the car probably would restart if he let it sit for a couple of minutes. Trooper Ferry asked to see Bell's license and registration in order to fill out a routine "checkup slip," which the State Police use to keep a record of patrolling officers' contacts with motorists. Bell stated that the car was not registered in his name, but he would try to find the registration.  As Bell leaned over toward the glove compartment, Trooper Ferry bent down and trained his flashlight into the vehicle in the direction of the glove compartment.  Glancing downward, Trooper Ferry observed, on the driver's side door armrest, a clear plastic straw with white powder residue on its tip, and a folded dollar bill.  Trooper Ferry then shone the flashlight on the armrest, at which point Bell became visibly nervous, and placed his wallet on top of the straw.  Based upon his law enforcement experience, Trooper Ferry concluded that

-2-

the white powder was an illegal substance, and placed Bell under arrest. During the ensuing search of Bell's person incident to the arrest, Trooper Ferry found a bag of cocaine, and a subsequent inventory search of the vehicle disclosed crack cocaine, marijuana, and assorted drug paraphernalia.

Following his one-count indictment for possession of cocaine base with intent to distribute, 21 U.S.C. § 841(a)(1), Bell submitted a motion to suppress the evidence seized during and after his arrest, contending, inter alia, that Trooper Ferry had violated his Fourth Amendment rights when he stuck his head into the window of the car in order to observe the driver's side door armrest. At the suppression hearing, Trooper Ferry testified as follows on cross-examination:

> Q: At this point when you look down, are you standing outside the vehicle?
> A: Yes, I am.
> Q: And is your head inside the vehicle?
> A: I don't believe it's inside the vehicle. I was adjacent to the vehicle, the driver's door.
> Q: Did you put your head in the window?
> A: It may have been in the window. Obviously I was looking in the glove box.
> Q: So that your head may have been inside the window?
> A: I wasn't sticking my head inside the car if that's what you're saying.
> Q: Right. But when you look down and see something in the door handle, are you –
> A: My head's at the window. I bent down.
> Q: So is your head partially where the window would have been, let's say?
> A: Yeah, it could have been.

(Emphasis added.). Denise Babbitt, Bell's fiancee, testified

-3-

regarding several photographs she had taken of the vehicle after Bell's arrest, purporting to demonstrate that a person standing outside the driver's side window could not have seen the armrest unless his head partially intruded past the plane where the rolled-up window would have been.

The district court denied the suppression motion, noting:

> Did he see those items in plain view? . . . I find that he did.  There was no evidence that [Trooper Ferry] stuck his head inside the car.  He testified specifically that he did not. . . . Was he at the window?  He was.  Was the straw and the means of transporting the narcotics visible to him in plain view from outside the car at the window?  It was.

The district court found the Babbitt photographs "unhelpful because they're not taken from the right vantage points."  The court later stated:

> If you're suggesting that your case is going to turn on, did two millimeters of [Trooper Ferry's] forehead skin pass within one micron of the inside surface of the window had it been up, I can't help you there.  I can't make that discrete a finding based on the transcript that you have given me or the evidence you have presented.

In due course, Bell entered a conditional guilty plea reserving the right to appeal from the denial of his suppression motion, which he now exercises.

On appeal, Bell reiterates his contention that Trooper Ferry admitted that his head partially intruded inside the window of the vehicle, and since Trooper Ferry did not observe the

-4-

contraband on the armrest from a lawful vantage, the search is not sustainable under the plain view doctrine.

We review the denial of a suppression motion under a bifurcated standard, assessing the district court's legal conclusions de novo, and its subsidiary findings of fact for clear error. See United States v. Mahler, 454 F.3d 13, 17 (1st Cir. 2006). We accord considerable deference to the district court's assessments of witness credibility, see United States v. Ivery, 427 F.3d 69, 72 (1st Cir. 2005), cert. denied, 126 S. Ct. 1448 (2006), and view all evidence and reasonable inferences therefrom in the light most favorable to the government, see United States v. Cook, 277 F.3d 82, 84 (1st Cir. 2002).

The government justifies Trooper Ferry's seizure of the contraband from the Bell vehicle's armrest pursuant to the "plain view doctrine," which validates a seizure where "(1) the seizing police officer lawfully reached the position from which he could see the item in plain view; (2) the seizure satisfied the probable cause standard; and (3) the seizing officer had a 'lawful right of access to the object itself.'" United States v. Antrim, 389 F.3d 276, 283 (1st Cir. 2004) (citation omitted), cert. denied, 544 U.S. 936 (2005). Bell's argument relates only to the first criterion, since he maintains that the record compels a finding that Trooper Ferry's head intruded into his car past the boundary where the driver's side window would have been had the window been rolled up.

-5-

For present purposes, we shall assume, without deciding, that Bell's demarcation of an imaginary line, where the rolled-up window would have been, has legal significance under the "plain view" doctrine. However, whether Trooper Ferry leaned into the Bell vehicle before observing the contraband is a quintessential issue of fact.[1] We discern no clear error in the district court's negative response.

The district court explicitly credited Trooper Ferry's testimony that he "wasn't sticking [his] head inside the car." The ensuing testimony, during which Trooper Ferry stated that his head was "at" the window, may simply connote that he bent down outside the window, so that his face was level with it. Plainly, it need not connote that Trooper Ferry's head was "in" the space which would be occupied by the rolled-up window. Trooper Ferry then suggested simply that his head "could have been" "where the window would have been." It did not state that his head was where the window would have been.

As the district court aptly noted, the suppression hearing produced no evidence upon which the court reliably might have determined the precise location of the trooper's head before he viewed the contraband. Nor was any other eyewitness testimony

---

[1]Bell concedes that Trooper Ferry's use of a flashlight to illuminate inside the vehicle from the outside did not constitute a Fourth Amendment "search." See Texas v. Brown, 460 U.S. 730, 739-40 (1983).

-6-

presented. Bell nevertheless invites us to engage in hyper-technicality, unaccompanied by any statistical evidence from which the court independently might have ascertained the question, such as the trooper's height, exact location in relation to the driver's side door, or the dimensions of the vehicle or the driver's side window. Tellingly, Bell has not included his fiancee's photos of the vehicle in the appellate record, thereby effectively conceding the district court's finding that the photos were "unhelpful." Plainly then, in these particular circumstances, it was not clear error for the district court to credit the testimony that Trooper Ferry "wasn't sticking [his] head inside the car." See, e.g., United States v. Stanfield, 109 F.3d 976, 979 n.1 (4th Cir. 1997) (deferring to police officer's version of his location during "plain view" seizure inside vehicle). As Trooper Ferry was lawfully positioned outside the Bell vehicle, the ensuing seizure of the contraband from the driver's side armrest was valid. See Antrim, 389 F.3d at 283.[2]

---

[2]None of Bell's other arguments on appeal deserve extended discussion. The contention that the trooper's observation of the contraband did not provide him with "probable cause" to make the arrest is belied by the record evidence: Trooper Ferry, an officer with ten years' law enforcement experience, justifiably could conclude that the straw with white powder, the folded currency (a common mode of transporting illegal drugs), see, e.g., United States v. Pittman, 418 F.3d 704, 708 (7th Cir. 2005), and Bell's sudden nervousness and attempt to hide the contraband, provided more than adequate basis to arrest Bell on suspicion of drug possession. Accordingly, the Bell challenge to the post-arrest inventory search of the vehicle is likewise without merit.

**Affirmed**.