# United States Court of Appeals
## For the First Circuit

No. 17-1125

UNITED STATES OF AMERICA,

Appellee,

v.

JOSEPH E. CLARK,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Stahl, and Barron,
Circuit Judges.

Peter J. Cyr for appellant.
Julia M. Lipez, Assistant U.S. Attorney, with whom Richard W.
Murphy, Acting U.S. Attorney, was on brief, for appellee.

January 3, 2018

**STAHL**, **Circuit Judge**.   Joseph Clark appeals from the district court's denial of his motion to suppress drug evidence found on his person during a traffic stop.  Clark claims that after Officer Christopher McGoon stopped a vehicle in which Clark was a passenger for a traffic violation, McGoon unreasonably extended the duration of the traffic stop and thereby violated his rights under the Fourth Amendment.  Clark also challenges the district court's ruling that the drug evidence found during the resulting patdown search, which the government concedes was unlawful, did not need to be excluded because of the inevitable discovery exception to the exclusionary rule.  After careful consideration, we affirm.

## I.

On July 20, 2015, McGoon, a Saco Police Department officer, stopped a vehicle for erratic driving and for running a red light.  At the time of the stop, McGoon had been with the Saco Police Department for approximately one year and had previously served in the military.  Megan Maietta was driving the vehicle and Clark was her sole passenger.

McGoon requested identification from Maietta, and she provided her Maine driver's license and a damaged copy of her car's registration.   McGoon then asked Clark if he had any identification.  Clark said he did not have a Maine identification, although he claimed he had had an identification issued by the

state of Georgia, but he did not have it with him because he had lost it. McGoon asked Clark how long he had lived in Maine, and Clark answered five years. Clark identified himself as "Joseph Leo Clark." Clark volunteered that his birthdate was August 6, 1986.

McGoon returned to talking with Maietta. According to McGoon, if Clark thereafter had remained silent, he would have made no further inquiry into Clark's identity. However, Clark interrupted the conversation with Maietta and voluntarily provided McGoon with his social security number and age. McGoon heard the first three numbers of Clark's social security number as "256," but recordings of the stop show that Clark actually said a number beginning with "257." Clark said he was twenty-six years old, which was inconsistent with the birthdate he had provided shortly before.[1] Below, McGoon testified that Clark was "speaking softly and looking straight ahead rather than turning to look at him," and that he was having "considerable difficulty hearing [Clark], particularly when there was passing traffic, and had to ask him several times to speak up." United States v. Clark, No. 2:15-CR-187-GZS, 2016 WL 3945131, at *2 (D. Me. July 19, 2016), aff'd, No. 2:15-CR-187-GZS, 2016 WL 4532062 (D. Me. Aug. 29, 2016).

---

[1] If Clark had been born on August 6, 1986, he would have been twenty-eight years old at the time of the stop.

- 3 -

Three-and-a-half minutes after the initial stop, McGoon went to his cruiser to verify Maietta's and Clark's identities. McGoon quickly verified Maietta's information, but his electronic search of the database found no match for Clark. Based on the lack of a match, as well as Clark's failure to have Maine identification despite having been a resident for five years, McGoon became concerned that Clark was trying to conceal his identity.

Six-and-a-half minutes after the initial stop, McGoon returned to the car to confirm Clark's information. McGoon spent one minute asking Clark for additional information about where he lived and any past contact he may have had with police. During this follow-up questioning, Officer Adam Linden arrived at the scene. After one minute of questioning, Clark told McGoon that his birthdate was August 25, 1986. Surprised by the different birthdate, McGoon asked Clark to confirm the date a third time. Clark became agitated and said, in a louder voice, "August 5, of '86." Clark, 2016 WL 3945131, at *2.

Soon thereafter, Officer Robyn Stankevitz radioed McGoon and Linden with a partial match for a Joseph Eugene Clark, a resident of Scarborough, Maine with a birthdate of August 25, 1983 and with three active arrest warrants, who fit Clark's general description.

Having received this information, McGoon and Linden returned to the car once again and asked Clark to repeat his identifying information. Clark provided the same social security number he provided earlier, but this time, McGoon heard Clark begin with the numbers "257." Still mistakenly believing Clark had previously offered a social security number beginning with "256," McGoon accused Clark of providing false information and told him that he was going to be detained "until we can figure this out." Clark, 2016 WL 3945131, at *3. McGoon ordered Clark out of the car and handcuffed him. Neither officer frisked Clark or noticed anything to indicate that Clark had a weapon. Clark denied that he was Joseph Eugene Clark and repeated that his middle name was "Leo."

Stankevitz radioed again and warned McGoon that Joseph Eugene Clark reportedly carried a firearm. Stankevitz also sent a photograph of Joseph Eugene Clark. Because of the image's low quality, McGoon could not determine whether the picture was of Clark and requested that Stankevitz come to the scene to identify Clark.

Approximately twenty minutes after the initial stop, Stankevitz and a newly hired officer in training, Officer Nathan Paradis, arrived at the scene. Stankevitz felt sure that Clark was the same Joseph Eugene Clark in the photograph and advised McGoon to take Clark back to the station to be fingerprinted.

McGoon called the station and the sergeant on duty asked whether Clark had been frisked.  Saco Police Department protocol requires officers to pat down a suspect before placing the suspect in a cruiser.  When the suspect arrives at the station, the suspect is searched more thoroughly.

Paradis conducted the patdown search of Clark.  During the patdown, Paradis felt a bump in Clark's waistband.  Paradis pulled out the object, which turned out to be two plastic bags of heroin and ecstasy.  The officers declared Clark under arrest and placed him in McGoon's cruiser, where he was transported back to the station.

On November 4, 2015, a grand jury indicted Clark on one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).  Clark filed a motion to suppress, arguing that the officer's seizure of him and search of his waistband violated the Fourth Amendment.  The magistrate judge recommended that the motion to suppress be denied and, over Clark's objection, the district court affirmed the recommendation.  Clark timely appeals.

## II.

In our review of a district court's ruling on a motion to suppress, "we examine its findings of fact for clear error and its conclusions of law de novo."  United States v. Fernandez, 600

F.3d 56, 58 (1st Cir. 2010).[2]  We first consider whether McGoon unconstitutionally extended the stop by inquiring into Clark's identity.

"A traffic stop constitutes a seizure of 'everyone in the vehicle' for purposes of the Fourth Amendment and thus must be supported by reasonable suspicion that a traffic violation has occurred."  United States v. Chaney, 584 F.3d 20, 24 (1st Cir. 2009) (quoting Brendlin v. California, 551 U.S. 249, 255 (2007)).  Once the police stop a vehicle, "the tolerable duration of police inquiries . . . is determined by the seizure's 'mission'--to address the traffic violation that warranted the stop and attend to related safety concerns."  Rodriguez v. United States, 135 S. Ct. 1609, 1614 (2015) (citations omitted).  In carrying out the seizure's "mission," an officer is also permitted to undertake those "ordinary inquiries incident to [the traffic] stop," id. at 1615 (quoting Illinois v. Caballes, 543 U.S. 405, 408 (2005)), which include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."  Id.

---

[2] Because the district court adopted the magistrate judge's recommended decision, we treat the factual findings and conclusions of law of the magistrate judge the same as we would those of the district court.  See United States v. Young, 835 F.3d 13, 15 n. 1 (1st Cir. 2016).

In addition, due to the "inherent dangers of a traffic stop," the police may request identification from passengers in the vehicle, so long as those requests "do not measurably extend the duration of the stop." Chaney, 584 F.3d at 26. "Although the [Supreme] Court has not explicitly held that an inquiry into a passenger's identity is permissible, its precedent inevitably leads to that conclusion." Fernandez, 600 F.3d at 61 (emphasis in original); see Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 186 (2004) ("Obtaining a suspect's name in the course of a Terry stop serves important government interests. Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder.").

After McGoon returned to the vehicle, he questioned Clark about his identity for one minute, at which point Clark provided not one, but two dates of birth inconsistent with the date he initially gave McGoon. Clark concedes that once he provided this set of inconsistent birthdates, McGoon had reasonable suspicion to continue questioning him. He therefore focuses his challenge on the one minute period of questioning.

The magistrate judge found that McGoon did not need reasonable suspicion to justify his one minute of follow-up questions. The magistrate judge viewed the follow-up questions as "part and parcel of the original identification request." Clark, 2016 WL 3945131, at *8. The magistrate judge noted that the

follow-up questions "did not prolong the traffic stop, which McGoon testified would have taken a total of about 15 to 20 minutes for purposes of issuing Maietta a summons had she been the vehicle's sole occupant."  Id.

We agree that McGoon's one minute of follow-up questions did not violate Clark's Fourth Amendment rights.  McGoon did not expand the scope of his original questions; he merely asked Clark to repeat his name and date of birth because he reasonably believed that there was a chance he had misheard Clark the first time.  As the magistrate judge found, Clark was "speaking softly and looking straight ahead rather than turning to look at him," and McGoon was having "considerable difficulty hearing him . . . and had to ask him several times to speak up." Clark, 2016 WL 3945131, at *2. Moreover, McGoon followed up with Clark because he was unable to verify Clark's information, including the information Clark had offered up voluntarily and not in response to any question.  In McGoon's experience, it was unusual "that someone who claimed to have had a state identification could not be found through an online search of the 'cross-agency' database.  Id.

"Traffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." Rodriguez, 135 S. Ct. at 1616 (quoting Arizona v. Johnson, 555 U.S. 323, 330 (2009)) (internal citations omitted).  Asking a

- 9 -

passenger, for one minute, to confirm identifying information he has already volunteered to the officer is one of these negligibly burdensome precautions justified by the unique safety threat posed by traffic stops.  Accordingly, given the circumstances of this case, McGoon's one-minute of follow-up questioning did not unlawfully prolong the traffic stop.

## III.

We turn next to Clark's claim that the inevitable discovery exception to the exclusionary rule should not apply to the evidence found during the patdown search.  On appeal, the government concedes that Officer Paradis exceeded the proper scope of a patdown search, but contends that the district court properly applied the inevitable discovery rule.

When applying the inevitable discovery rule, "we ask three questions: first, whether the legal means by which the evidence would have been discovered was truly independent; second, whether the use of the legal means would have inevitably led to the discovery of the evidence; and third, whether applying the inevitable discovery rule would either provide an incentive for police misconduct or significantly weaken constitutional protections." United States v. Almeida, 434 F.3d 25, 28 (1st Cir. 2006).  Clark focuses his argument solely on the third prong, for he admits that he would have been searched more thoroughly at the police station, whereby the drugs would have been discovered

- 10 -

through independent and lawful means.  Clark claims the patdown was not performed to protect officer safety, but was performed solely to find identification on him.

Clark faces a major hurdle: the magistrate judge found that the officers conducted the patdown search because they were reasonably concerned for their safety.  The magistrate judge determined the officers "had mixed motives" for conducting the patdown search, concluding that they searched Clark both because they wanted to find identification on him and because they were concerned for their safety.  Clark, 2016 WL 3945131, at *10.  The magistrate judge also found that the problems with the patdown search, including its illegal scope, "appear[] to have resulted from officer inexperience," noting that "McGoon neglected to frisk the defendant when handcuffing him; Linden, who was even less experienced than McGoon, did not inform him of the oversight; and Paradis, who performed the frisk, was an officer in training." Id. at *12.

"[W]e will overturn a district court's factual findings after a suppression hearing 'only if, after reviewing all of the evidence, we have a 'definite and firm conviction that a mistake has been committed.'" United States v. Henderson, 463 F.3d 27, 32 (1st Cir. 2006) (quoting United States v. Ivery, 427 F.3d 69, 72 (1st Cir. 2005)).  We see no such error here.  The magistrate judge credited Officer Paradis's testimony that he was significantly

concerned for his safety because of the firearm warning associated with Joseph Eugene Clark. The magistrate judge interpreted McGoon's request to Stankevitz to "have him pat him down or see if he has an ID" to reflect a concern for officer safety and a desire to obtain identification. Clark, 2016 WL 3945131, at *10 (emphasis in original).

Under these circumstances, we will not disturb what appears to have been the magistrate judge's credibility determination of the testimony presented. See Ivery, 427 F.3d at 72 ("Where evaluations of witnesses' credibility are concerned, we are especially deferential to the district court's judgment." (quoting United States v. Jones, 187 F.3d 210, 214 (1st Cir. 1999))). It was not clearly erroneous for the magistrate judge to find that the patdown was motivated in part by legitimate officer safety concerns. Because Clark raises no other arguments regarding the inevitable discovery rule, we need go no further.[3]

---

[3] In his opening brief, Clark focuses solely on attacking the magistrate judge's finding that the officers were concerned for their safety. He does not, for example, discuss the potential implications of a "mixed motive" search, whereby officers undertake a search for both permissible and impermissible reasons. Having failed to raise the issue to us, we will not reach out to address it. United States v. Arnott, 758 F.3d 40, 45 n. 6 (1st Cir. 2014). We note, however, that the magistrate judge also found that it was officer inexperience that led to the overly broad patdown search. See United States v. Pardue, 385 F.3d 101, 108 (1st Cir. 2004) ("[T]he record suggests that any Fourth Amendment violation was unintentional, and is clear that application of the inevitable discovery doctrine in this case does not create an incentive for future police misconduct.").

**IV.**

For the reasons discussed above, we affirm the decision of the district court.