#30424-a-MES
**2025 S.D. 19**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

LEE MARTIN HOLY,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON SOGN
Judge

* * * *

CHRISTOPHER MILES of
Minnehaha County Public
   Defender's Office
Sioux Falls, South Dakota                    Attorneys for defendant and
                                             appellant.


MARTY J. JACKLEY
Attorney General

SHALE R. KRAMME
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff and
                                        appellee.

* * * *

CONSIDERED ON BRIEFS
JUNE 4, 2024
OPINION FILED **03/26/25**

#30424

SALTER, Justice

[¶1.]    Lee Martin Holy appeals the circuit court's decision to deny his motion to suppress evidence seized during a roadside stop. Holy argues that police officers unreasonably extended the stop by asking about contraband without any level of suspicion. We affirm.

## Factual and Procedural Background

[¶2.]    On the evening of October 21, 2021, Officers Nicholas Stevens and Jason Purkapile of the Sioux Falls Police Department were operating as a two-person "roadside interdiction team." The officers observed a vehicle on West Russell Street with an inoperable right brake light and initiated a traffic stop. The ensuing sequence of events was captured with time-stamped video recorded by the body-mounted cameras the officers were wearing.

[¶3.]    At 9:50 p.m., Officer Stevens approached the driver of the stopped vehicle who was soon identified as Lee Holy. There was also a passenger with Holy who was identified as his grandfather.

[¶4.]    Officer Stevens requested Holy's driver's license and proof of insurance. Holy furnished a North Dakota driver's license but indicated he did not have proof of insurance. Given the out-of-state license, Officer Stevens asked if Holy had a local address; he stated he did and recited it for Officer Stevens.

[¶5.]    Returning to his patrol vehicle at 9:51 p.m., Officer Stevens worked on his laptop computer, completing routine license and warrant checks concerning Holy. Officer Stevens also decided to issue a warning ticket to Holy for the inoperable brake light, but he could not complete it because he had forgotten the

-1-

local address Holy had provided.[1] Officer Stevens left his patrol vehicle and returned to the driver's side of Holy's car at 9:54 p.m.

[¶6.] In the meantime, Officer Purkapile and Holy's grandfather had engaged in a conversation that began when Holy's grandfather opened the passenger side window and began visiting with Officer Purkapile. During the course of their interaction, Officer Purkapile asked Holy's grandfather if he had any identification. When Holy's grandfather produced a Minnesota identification card, Officer Purkapile initiated a warrant check by radio at 9:52 p.m. while he continued to speak with Holy's grandfather.

[¶7.] When Officer Stevens reached Holy's vehicle, he returned Holy's driver's license, but he did not ask Holy to repeat his local address. Instead, Officer Stevens explained that he and Officer Purkapile were engaged in roadside interdiction efforts to locate contraband during the course of their ordinary patrol responsibilities. Officer Stevens asked Holy if he had anything illegal in the car, and Holy replied, "No."

[¶8.] Officer Stevens immediately followed up, at 9:55 p.m., and asked if Holy would object to a search of his vehicle. Holy stated that he had a small quantity of marijuana in the car and had a medical cannabis card. A few seconds later, Officer Purkapile's warrant check for Holy's grandfather came back negative. In fact, the recorded audio from Officer Purkapile's body camera picked up Holy's

---

1.    The circuit court specifically found Officer Stevens' testimony on this point to be credible.

admission to possessing marijuana just moments before a dispatcher confirmed that Holy's grandfather did not have any outstanding warrants.

[¶9.] Viewing Holy's statement about possessing marijuana as probable cause, Officer Stevens conducted a search of Holy's car and discovered what appeared to be a methamphetamine pipe in a backpack. Holy admitted the pipe belonged to him, and he was arrested. A search of his person revealed a baggie containing methamphetamine.

[¶10.] A Minnehaha County grand jury returned an indictment charging Holy with one count of possession of a controlled substance and one count of possession of drug paraphernalia. Holy pled not guilty and sought to suppress the evidence seized during the October 21 traffic stop, arguing that Officer Stevens unreasonably extended the traffic stop through his unrelated inquiry into contraband and the request to search.

[¶11.] The circuit court denied Holy's motion to suppress. The court recognized that Officer Stevens had not asked again for Holy's address when he returned to the side of Holy's car and had, instead, explained his interdiction role and asked for permission to search the car. However, the court concluded that Officer Stevens had not unreasonably delayed the stop, citing two reasons.

[¶12.] First, the length of time taken for the interdiction exchange did not "unduly" extend the stop. And second, the circuit court concluded Officer Stevens' interdiction questions did not extend the length of the stop, in any event, because Officer Purkapile's warrant check for Holy's grandfather was pending while Officer Stevens was talking to Holy about the unrelated topic of contraband.

[¶13.]     At a subsequent court trial, the circuit court relied upon stipulated facts to find Holy guilty of both counts. The court suspended a prison sentence and ordered supervised probation for the possession of a controlled substance charge and imposed court costs for the misdemeanor drug paraphernalia charge.

[¶14.]     Holy now appeals challenging the circuit court's decision to deny his motion to suppress.

## Analysis

[¶15.]     In the context of the Fourth Amendment, the reasonableness of a roadside stop, and the seizure that results, "depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S. Ct. 330, 332, 54 L. Ed. 2d 331 (1977) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975)). Courts are guided in this inquiry by a well-established set of governing legal principles that commonly focus on the purpose of the stop and the justification for its duration.[2]

[¶16.]     "A lawful traffic stop may become unlawful 'if it is prolonged beyond the time reasonably required to complete' its purpose." *State v. Littlebrave*, 2009 S.D. 104, ¶ 12, 776 N.W.2d 85, 89–90 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 837, 160 L. Ed. 2d 842 (2005)); *see also State v. Bonacker*, 2013 S.D. 3, ¶ 19, 825 N.W.2d 916, 922–23 (quoting *Littlebrave*, 2009 S.D. 104, ¶ 12, 776

---

2.     We review the circuit court's findings of fact for clear error, and we review de novo the court's ultimate determination on the legal question relating to reasonableness under the Fourth Amendment. *State v. Barry*, 2018 S.D. 29, ¶ 9, 910 N.W.2d 204, 208.

N.W.2d at 89–90). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *State v. Ballard*, 2000 S.D. 134, ¶ 11, 617 N.W.2d 837, 841 (alteration in original) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325–26, 75 L. Ed. 2d 229, 238 (1983)); *see also Rodriguez v. United States*, 575 U.S. 348, 350–51, 135 S. Ct. 1609, 1612, 191 L. Ed. 2d 492 (2015) (cleaned up) (citation omitted) ("A seizure justified only by a police-observed traffic violation . . . becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation.").

[¶17.]     But this is not to say that a police officer may only narrowly address the purpose of the stop and nothing more. "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Rodriguez*, 575 U.S. at 355, 135 S. Ct. at 1615 (alteration in original) (quoting *Caballes*, 543 U.S. at 408, 125 S. Ct. at 837). These inquiries typically include things like "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* (citing *Delaware v. Prouse*, 440 U.S. 648, 658–60, 99 S. Ct. 1391, 1399, 59 L. Ed. 2d 660 (1979)).

[¶18.]     And other areas of unrelated questions are permissible too, subject to two accepted rules. First, "[t]he seizure remains lawful only 'so long as [unrelated] inquiries do not measurably extend the duration of the stop.'" *Id.* (second alteration in original) (quoting *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S. Ct. 781, 788, 172 L. Ed. 2d 694 (2009)). For instance, in *Muehler v. Mena*, 544 U.S. 93, 125 S. Ct.

1465, 161 L. Ed. 2d 299 (2005), the Supreme Court held that questions that were unrelated to the purpose of an individual's detention did not violate the Fourth Amendment because the questions did not extend the length of the detention. 544 U.S. at 101, 125 S. Ct. at 1471. The unrelated questions, themselves, do not implicate the Fourth Amendment's reasonableness standard, but the time it takes to ask them does if it extends the length of the stop. *See id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991)) ("We have 'held repeatedly that mere police questioning does not constitute a seizure.'").

[¶19.] Second, unrelated questions are permissible where a police officer has reasonable suspicion to ask them. *See Barry*, 2018 S.D. 29, ¶ 14, 910 N.W.2d at 210 ("*Rodriguez* is controlling here unless [the officer] had reasonable suspicion of drug activity to justify extending the stop of [the defendant]."). The existence of "reasonable suspicion that additional criminal activity is afoot" will justify extending the length of the stop in order to resolve the officer's suspicion. *Littlebrave*, 2009 S.D. 104, ¶ 16, 776 N.W.2d at 91 (citations omitted).

[¶20.] Here, the interdiction questions were not directly related to the mission or purpose of the stop, and they were not "ordinary inquiries incident to the traffic stop." *Rodriguez*, 575 U.S. at 355, 135 S. Ct. at 1615 (cleaned up). Nor were the unrelated interdiction questions supported by reasonable suspicion of criminal activity. Officer Stevens confirmed at the suppression hearing that he did not develop "reasonable suspicion" of additional criminal conduct until *after* he asked Holy if he "had anything dangerous or illegal[,]" and Holy admitted to having

marijuana in the vehicle.[3] But developing suspicion as a result of the unrelated interdiction questions cannot, of course, be used as a basis to ask them. Indeed, Officer Stevens' testimony makes clear that his interdiction questions were not prompted by reasonable suspicion in the first place; they were simply an unsupported diversion from the purpose of the stop.

[¶21.]     In the absence of reasonable suspicion, therefore, *Rodriguez* controls, as we noted in *Barry*, 2018 S.D. 29, ¶ 14, 910 N.W.2d at 210. That is, if an officer asks questions that are unrelated to the mission and unsupported by reasonable suspicion and, in so doing, extends the time reasonably required to complete the mission, the roadside stop transgresses the reasonableness limitation imposed under the Fourth Amendment.

[¶22.]     We note that in some of our earlier decisions, we have stated that unrelated questions do "not impermissibly expand the scope of a traffic stop . . . as long as the questioning does not *unduly* extend the duration of the initial, valid seizure." *Littlebrave*, 2009 S.D. 104, ¶ 12, 776 N.W.2d at 89 (emphasis added) (quoting *State v. Akuba*, 2004 S.D. 94, ¶ 20, 686 N.W.2d 406, 415). By itself, this formulation is somewhat elliptical in light of *Rodriguez* because it does not account for the nature of the question—related to the mission or not—or whether the questions were supported by reasonable suspicion.

---

3.     In its direct examination of Officer Stevens, the State used the term "reasonable suspicion" to describe the effect of Holy's admission, but it seems more accurately described as probable cause. *See Littlebrave*, 2009 S.D. 104, ¶ 20, 776 N.W.2d at 93 (holding a driver's admission to possession of drugs in the car established probable cause); *State v. Bergee*, 2008 S.D. 67, ¶ 12, 753 N.W.2d 911, 914 (same).

[¶23.] However, in the absence of these two justifications, *Rodriguez* holds that a stop becomes unreasonable if the unrelated questions "measurably extend the duration of the stop." *Rodriguez*, 575 U.S. at 355, 135 S. Ct. at 1615 (citation omitted). For this reason, we cannot affirm the circuit court's conclusion that Officer Stevens could permissibly ask the interdiction questions without reasonable suspicion as long as they did not unduly add length to the stop. This view is similar to the argument the Supreme Court rejected in *Rodriguez,* which posited a police officer could extend the length of a stop without justification if it constituted only a de minimis intrusion. *See id.* at 357.[4]

[¶24.] But the overall *Rodriguez* inquiry remains—did Officer Stevens' unrelated interdiction questions extend the length of the traffic stop beyond the time reasonably required to complete the mission? The circuit court determined they ultimately did not, and we agree.

[¶25.] As an additional basis for denying Holy's motion to suppress, the circuit court concluded that the length of the stop was not extended because "Officer Purkapile was still in the process of running the identification check on the front seat passenger at the time [Holy] admitted to Officer Stevens that there was marijuana in the vehicle." In other words, by the time Officer Purkapile's warrant

---

4.     The use of "blended" questioning, during which a police officer intersperses unrelated investigatory questions with those related to the purpose of the stop, holds the real potential for an unreasonably prolonged stop where the unrelated questions are unsupported by additional reasonable suspicion. *See United States v. Peralez*, 526 F.3d 1115, 1121 (8th Cir. 2008) (noting the use of "blended-purpose" questions unreasonably extended the length of the traffic stop).

check was completed, Officer Stevens had obtained probable cause to search Holy's car.

[¶26.]     Significantly, Holy has not challenged this alternate ruling and does not mention it in his opening brief. The State does mention the ruling in its brief, arguing that the pendency of the passenger warrant check meant that the stop was not yet completed. Holy responds to this argument in his reply brief by arguing essentially that the passenger warrant check would have been subsumed into the length of the stop if Officer Stevens would have "stayed the course" and simply collected the address information and completed the warning ticket. However, we cannot consider this response to be a challenge to the circuit court's alternative ruling, either substantively or procedurally. *See Ellingson v. Ammann*, 2013 S.D. 32, ¶ 10, 830 N.W.2d 99, 102 (citation omitted) ("A party may not raise an issue for the first time on appeal, especially in a reply brief when the other party does not have the opportunity to answer.").

[¶27.]     Under the circumstances, we conclude that Officer Purkapile's passenger warrant check is not before us in this appeal, and we affirm the circuit court's denial of Holy's motion to suppress because, as noted above, the interdiction questions in this case did not extend the length of the traffic stop beyond the time necessary to complete the mission. In doing so, we take pains to make clear that we are not ruling on the question of whether a police officer can undertake a routine warrant check for a passenger, and, if so, whether this time can be used to lawfully

extend the length of a stop. The merits of those issues are simply not presented in this appeal, and we leave those determinations for another day.[5]

[¶28.]        JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

5.      The Supreme Court has not considered the question whether a passenger warrant check is permissible under the Fourth Amendment. Some federal appellate courts, however, have upheld these types of warrant checks. *See United States v. Clark*, 879 F.3d 1, 4 (1st Cir. 2018) (citation omitted) ("[D]ue to the 'inherent dangers of a traffic stop,' police may request identification from passengers in the vehicle, so long as those requests 'do not measurably extend the duration of the stop.'"); *see also United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) ("[A]n officer may ask for identification from passengers and run background checks on them as well[.]"); *United States v. Soriano-Jarquin*, 492 F.3d 495, 500 (4th Cir. 2007) (citation omitted) ("Just as the officer may ask for the identification of the driver of a lawfully stopped vehicle . . . so he may request identification of the passengers also lawfully stopped.").