1999 SD 2

**SOUTH DAKOTA SUBSEQUENT INJURY FUND, Appellant,**

v.

**CASUALTY RECIPROCAL EXCHANGE**
and Dakota Truck Underwriters,
Appellees.

No. 20531.

Supreme Court of South Dakota.

Considered on Briefs Dec. 3, 1998.

Decided Jan. 6, 1999.

Timothy E. Reilly, Assistant Attorney General and Division Counsel South Dakota Division of Insurance, Pierre, for appellant.

Susan Jansa Brunick and Dana M. Van Beek of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellees.

1. Somatoform pain disorder is a preoccupation with pain in the absence of adequate physical

AMUNDSON, Justice.

[¶ 1.] Subsequent Injury Fund (SIF) appeals the circuit court's decision affirming Department of Labor's (Department) determination that both Casualty Reciprocal Exchange (CRE) and Dakota Truck Underwriters (DTU) established claims for reimbursement from SIF. We affirm.

## FACTS

[¶ 2.] Two cases were combined for consideration because they involve similar facts and present the same legal issue.

### Casualty Reciprocal Exchange/Niederman

[¶ 3.] Darlene Niederman was employed as a cook for Employer, Lumberyard Restaurant, Inc. On July 21, 1986, Niederman reported a work-related back injury. During the treatment of her back injury, Niederman was diagnosed with a somatoform pain disorder[1] in addition to the mechanical back pain disorder. Niederman had sustained a number of physical, mental and substance abuses during the years preceding her back injury, which resulted in a preexisting psychological condition. This preexisting psychological condition increased her chances of developing somatoform pain disorder.

[¶ 4.] The claim for workers' compensation benefits was ultimately settled through a Compromise Agreement approved by Department. The agreement provided that Niederman's disability was the result of the low-back injury combined with the aggravation of a preexisting psychological condition, resulting in somatoform pain disorder. The agreement provided for a lump-sum payment of $100,000. This payment was in addition to disability benefits of $28,657.56, and medical expenses of $20,701.30 paid to Niederman prior to settlement.

[¶ 5.] On April 10, 1996, CRE filed a claim for reimbursement from the SIF. CRE claimed Niederman suffered from a preexisting psychological condition and her subsequent injury was the low-back injury in July 1986. On November 19, 1996, the SIF de-

findings to account for the pain or its intensity.

nied CRE's claim, stating there was no disability or impairment rating attributable to the employee's alleged preexisting psychological condition. Therefore, no subsequent injury to employee.

### Dakota Truck Underwriters/Bush

[¶ 6.] Everett Bush was employed as a truck driver by Midwest Coast Transport, L.P. On August 28, 1995, Bush reported a work-related injury to his back. Bush was examined and treated by several doctors, but his condition did not improve. Subsequent X-rays revealed Bush had a compression fracture, as well as significant osteopenia.[2] Bone density testing revealed marked osteoporosis.[3] With regard to Bush's condition, Dr. Robert Suga stated, "the fracture, in my opinion, would have to be considered a pathologic[4] fracture related to his osteopenia which was documented on bone densitometry. The fracture was however, incurred as a result of his work related activity."

[¶ 7.] Bush's workers' compensation claim was settled. The compromise agreement, approved by Department, paid a lump sum of $23,000 in addition to the disability already paid. The lump sum also includes $1,400 as an advance toward future medical expenses. Total indemnity benefits paid to Bush over the course of the claim were $33,616.64 and total medical expenses were $2,810.99.

[¶ 8.] DTU filed a claim for reimbursement from SIF. SIF denied DTU's claim under the rationale that no disability or impairment rating existed that was attributable to the preexisting condition of osteopenia and, as a result, there had been no subsequent injury to the employee.

[¶ 9.] CRE and DTU filed a petition for hearing with Department on December 5, 1996.[5] Department determined that, under the 1995 amendment to SDCL 62-4-34, a preexisting injury need not have resulted in a disability to obtain reimbursement from the SIF. Therefore, Department approved CRE and DTU's claims for reimbursement. The circuit court affirmed. SIF now appeals, raising the following issues for review:

[¶ 10.] 1. Whether an eligible claim for reimbursement from the Subsequent Injury Fund must show that a prior injury or preexisting condition be of a disabling quality.

[¶ 11.] 2. Whether claimants have demonstrated that their respective employees have received subsequent injuries within the meaning of the Subsequent Injury Fund.

## STANDARD OF REVIEW

[¶ 12.] The issue on appeal is a statutory interpretation of the 1995 amendment to SDCL 62-4-34. On issues of statutory interpretation, this Court reviews Department's decision de novo. *Dahn v. Trownsell,* 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539.

## DECISION

[¶ 13.] **1. Whether an eligible claim for reimbursement from the Subsequent Injury Fund must show that a prior injury or preexisting condition be of a disabling quality.**

[¶ 14.] The Subsequent Injury Fund was set up to assist workers with some type of preexisting disability, condition or handicap, to obtain employment notwithstanding the liability exposure of an employer who would hire such worker in the event of a second injury. *See* 5 Larson, Worker's Compensation Law, § 59.30 (1998). SIF re-

---

2. Osteopenia is defined as the "decreased calcification or density of bone." Stedman's Medical Dictionary 1005 (23rdEd 1979).

3. Osteoporosis is defined as "the reduction in quantity of bone or atrophy of skeletal tissue." Stedman's Medical Dictionary 1005 (23rdEd 1979).

4. Pathologic is defined as "resulting from disease." Stedman's Medical Dictionary 1040 (23rdEd 1979).

5. SDCL 62-4-34.2 provides for an appeal to the Department, stating:

   If the division denies a claim made against the subsequent injury fund, the employer may request a hearing. The hearing shall be conducted by a hearing examiner appointed by the secretary of labor. The attorney general shall represent the subsequent injury fund. The hearing shall be conducted pursuant to the provisions of chapter 1-26.

imburses an employer for two-thirds of compensation paid due to a subsequent injury had there been no preexisting injury or condition. SDCL 62–4–34.

[¶ 15.] In 1995, the statute governing reimbursement to employers was amended. SDCL 62–4–34, as amended, provides in relevant part:

> If an employee who has previously sustained an injury *or suffers from a preexisting condition,* receives a subsequent compensable injury resulting in additional permanent partial or permanent total disability so that the degree or percentage of disability caused by the *combination of the subsequent injury and the preexisting injury or condition* is substantially greater than that which resulted from the last injury, considered alone; and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer shall pay all medical and hospital expenses and compensation provided by this title. The employer shall be reimbursed from the "subsequent injury fund" for *two-thirds* of all compensation, medical and hospital expenses *paid to or on behalf of the injured employee due to the subsequent injury.* ... (Emphasis added.)

The previous version of SDCL 62–4–34 provided, in relevant part:

> If an employee who has previously sustained an injury *which resulted in disability from any cause or origin irrespective of compensability,* receives a subsequent compensable injury resulting in additional permanent partial or permanent total disability so that the degree or percentage of disability caused by the *combined injuries* is substantially greater than that which resulted from the last injury, considered alone; and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer shall pay all medical and hospital expenses and compensation provided by this title. The employer shall be reimbursed from the "subsequent injury fund" for all compensation, medical and hospital expenses, *paid in excess of the compensation paid for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability.* ... (Emphasis added.)

[¶ 16.] CRE and DTU argue the 1995 amendment to SDCL 62–4–34 eliminated the requirement that the preexisting injury or condition result in disability. SIF, conversely, argues the preexisting condition must have resulted in a disability before reimbursement from the SIF is appropriate.

[¶ 17.] The rules of statutory construction adopted by this Court state:

> "The purpose of rules regarding the construction of statutes is to discover the true intention of the law, and said intention is to be ascertained by the court primarily from the language expressed in the statute. In applying legislative enactments, we must accept them as written. The legislative intent is determined from what the legislature said, rather than from what we or others think it should have said.
>
> While it is fundamental that we must strive to ascertain the real intention of the lawmakers, it is equally fundamental that we must confine ourselves to the intention as expressed in the language used. To violate the rule against supplying omitted language would be to add voluntarily unlimited hazard to the already inexact and uncertain business of searching for legislative intent.
>
> One of the primary rules of statutory ... construction is to give words and phrases their plain meaning and effect. This court assumes that statutes mean what they say and that legislators have said what they meant. When the language of a statute is clear, certain and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute."

*Delano v. Petteys,* 520 N.W.2d 606, 608 (S.D. 1994) (quoting *In re Famous Brands, Inc.,* 347 N.W.2d 882, 884–85 (S.D.1984)).

[¶ 18.] Long ago the effect of amending a statute was recognized:

> It is a cardinal principle of statutory construction to give effect to the legislative intent where possible. It is further an

established principle of statutory construction that, where the wording of an act is changed by amendment, it is evidential of an intent that the words shall have a different construction.

*In re Dwyer*, 49 S.D. 350, 353–54, 207 N.W. 210, 212 (1926). When an amendment is passed, it is presumed the legislature intended to change existing law. *Delano*, 520 N.W.2d at 609; *John Morrell & Co. v. Dep't of Labor*, 460 N.W.2d 141, 145 (S.D.1990); *Rosander v. Bd. of County Comm'rs of Butte County*, 336 N.W.2d 160, 161 (S.D.1983). An amendment indicates a change in rights:

> The courts have declared that the mere fact that the legislature enacts an amendment indicates that it thereby intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights.

1A, Sutherland, Statutory Construction, § 22.30 (5thEd 1991).

[¶ 19.] The 1995 amendment eliminated the language "which resulted in disability from any cause or origin irrespective of compensability." SIF's interpretation does not differ from the statute's interpretation prior to the amendment and ignores the fact that the language "which resulted in disability" was eliminated when the statute was amended. Such an interpretation conflicts with the presumption that the legislature does not intend a meaningless or ineffective result when adding or deleting language in SDCL 62–4–34. *See Delano*, 520 N.W.2d at 609. This Court is to presume the legislature's amendment was passed to change existing law and "that the legislature intended to alter the meaning of the statute to comport with the new terms." *Delano*, 520 N.W.2d at 609; *Rosander*, 336 N.W.2d at 161. Thus, it is clear the legislature removed the requirement that the injury result in a disability before a claim for reimbursement from SIF can be made.

[¶ 20.] SIF also argues the requirement of proving disability is implied in the statute through the language "additional permanent partial or permanent total disability,"

and the phrase "combined disabilities." We disagree. When the language of a statute is clear on its face, there is no room for construction. *Moss v. Guttormson*, 1996 SD 76 ¶ 10, 551 N.W.2d 14, 17(citing *U.S. West Communications, Inc. v. Public Utilities Comm'n*, 505 N.W.2d 115, 123 (S.D.1993)). The language, "additional permanent partial or permanent total disability," refers to the disability attributable to the combination of the compensable injury and the preexisting condition or injury. The term "combined disabilities" refers to a combination of the subsequent injury and the preexisting injury or condition. If the legislature had intended to maintain the requirement the injury must have resulted in disability, they would not have deleted the language, "which resulted in disability" and replaced it with "or suffers from a preexisting condition."

[¶ 21.] The purpose behind SIF is to encourage employers to hire disabled or handicapped employees. *Sioux Falls School Dist. v. South Dakota Subsequent Injury Fund*, 504 N.W.2d 107 (S.D.1993). *See generally* Larson, *supra*, § 59.30. SIF argues the policy behind the subsequent injury fund is violated by the amendment. We disagree. SIF continues to serve as encouragement to employers to hire disabled or handicapped persons, however, the amendment expands reimbursement to include persons with injuries or conditions which did not necessarily equate to a rated disability.

[¶ 22.] The legislature changed the meaning of the statute when it amended it. "This court assumes that statutes mean what they say and that legislators have said what they meant." *In re Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D.1984) (citations omitted). Again we are reminded that: "The legislative intent is determined from what the legislature said, rather than from what we or others think it should have said." *Id.* The 1995 amendment eliminated the requirement of showing disability, and in its place requires a preexisting condition which in combination with the subsequent injury

results in permanent partial or total disability.[6]

[¶ 23.] 2. Whether claimants have demonstrated their respective employees have received subsequent injuries within the meaning of the Subsequent Injury Fund.

[¶ 24.] Department found in applying the facts to the law, CRE and DTU had met the statutory requirements for reimbursement. We agree.

[¶ 25.] We review the record to determine whether there is evidence to support Department's findings. *Howie v. Pennington County,* 1997 SD 45, ¶ 10, 563 N.W.2d 116, 118–19. "We do not look for reasons to reverse, even if we would not have made a similar decision, but confine our review to a determination whether the record contains substantial evidence to support the agency's decision." *Fenner v. Trimac Transp., Inc.,* 1996 SD 121, ¶ 15, 554 N.W.2d 485, 489 (internal citation omitted). In reviewing this record, there is support for Department's finding to reimburse CRE and DTU from the fund.

[¶ 26.] Affirmed.

[¶ 27.] MILLER, Chief Justice, SABERS, KONENKAMP, and GILBERTSON, Justices, concur.

---

6. We agree with the trial court when it stated:

And it's this court's conclusion that when you combine the legislative addition of "a preexisting condition" with the elimination of the requirement that "it resulted in disability" that the language is clear and unambiguous and that language supports the conclusion that a disability is no longer required.... [T]he court cannot comprehend what the Legislature could have possibly meant when it deleted the language "resulted in disability" unless that's exactly what it meant was to eliminate that requirement.