#31001-a-PJD
**2026 S.D. 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

THEODORE GUZMAN,                                    Petitioner and Appellant,

 v.

DANIEL SULLIVAN, Warden,
South Dakota State Penitentiary,                    Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT GUSINSKY
Judge

* * * *

STANTON A. ANKER of
Anker Law Group, P.C.
Rapid City, South Dakota          Attorneys for petitioner and
                                  appellant.


MARTY J. JACKLEY
Attorney General

JENNIFER M. JORGENSON
MATTHEW W. TEMPLAR
Assistant Attorneys General
Pierre, South Dakota              Attorneys for respondent and
                                  appellee.

* * * *

CONSIDERED ON BRIEFS
JANUARY 12, 2026
OPINION FILED **06/17/26**

#31001

DEVANEY, Justice

[¶1.]        Theodore Guzman filed a habeas application alleging ten grounds for relief and requesting the appointment of counsel.  The habeas court dismissed each ground without a hearing or the appointment of counsel.  This Court granted a certificate of probable cause (CPC) allowing an appeal of four issues and ordered the appointment of appellate counsel.  Guzman's appellate brief addresses only two of the four issues and raises several other issues that we did not certify.  We affirm the habeas court's dismissal of the first and third certified issues and deem the second and fourth certified issues abandoned.

## Factual and Procedural History

[¶2.]        Guzman was indicted on three counts of rape of a minor and one count of sexual contact with a child under the age of sixteen, after his minor daughters, N.G. and L.G., and their friend, A.C., disclosed Guzman's sexual assaults against them.  These disclosures occurred in 2017 and 2018.  Guzman's first trial occurred in January 2020 and ended in a hung jury, and the trial court declared a mistrial.  After the court ordered a new trial, Guzman's defense counsel, Paul Winter, retired from the practice of law.  The court appointed Conor Duffy as Guzman's replacement counsel.

[¶3.]        After the second trial, which occurred in April 2021, a jury found Guzman guilty on all counts and the trial court sentenced him to three life sentences for the rape counts and fifteen years for the sexual contact count, all to run consecutively.  Guzman appealed his convictions to this Court, which we upheld in *State v. Guzman*, 2022 S.D. 70, 982 N.W.2d 875.

[¶4.] Following our decision, Guzman filed a pro se application for writ of habeas corpus (Application) and applied for court-appointed counsel on February 28, 2023. His Application alleged ten grounds for relief, including claims relating to the trial court's rulings and sentence, ineffective assistance of counsel claims, and a claim that he is actually innocent.

[¶5.] Thereafter, Respondent, South Dakota State Penitentiary Warden Daniel Sullivan, filed a motion to dismiss pursuant to SDCL 15-6-12(b)(5) (Rule 12(b)(5)) on March 28, 2023. Respondent argued Guzman's Application should be dismissed in its entirety, asserting that eight of his grounds failed to state a claim upon which relief could be granted and two of them were barred by res judicata because they were decided by this Court in the direct appeal. In the motion, Respondent argued that multiple "grounds contain factual misrepresentations, unsupported or conclusory statements, or [were] simply trying to relitigate facts already considered by the jury under the guise of a constitutional violation as though the jury was unaware of the facts."

[¶6.] On April 24, Guzman filed a pro se reply to the motion, pointing out that his petition was prepared without the assistance of counsel. Citing *Steiner v. Weber*, 2011 S.D. 40, 815 N.W.2d 549, he argued that he had sufficiently alleged grounds which, if proven, entitled him to relief and that an evidentiary hearing was warranted. In response to Respondent's argument that Guzman's grounds were unspecific and conclusory, Guzman noted he lacked the ability to access the trial transcripts in his pro se, incarcerated capacity. Guzman further alleged that he "recently learned that at least one victim has recanted her claim of abuse and

admitted she lied at the behest of her mother, to a third party. Due to the constraints of incarceration however, Petitioner can not indepently [sic] verify these claims at this time." Guzman did not identify the victim, the third party, or any other facts to support this allegation, nor did he amend the Application to include this new claim. He urged the habeas court to deny the motion to dismiss and requested that he be appointed counsel.

[¶7.] Approximately six months later, on November 12, 2023, Guzman corresponded with the circuit court's presiding judge regarding his request for counsel. Guzman wrote that he alleged facts, which if proven true entitle him to relief, and counsel was needed to investigate his claims and file an amended application. In response, the presiding judge wrote that "once the [c]ourt has had an opportunity to review your application, appointment of counsel will be addressed in accordance with SDCL 21-27-4 if your grounds for relief are not frivolous."

[¶8.] The habeas court did not appoint counsel, nor did it hold an evidentiary hearing. Instead, after considering the parties' written submissions, the court issued a memorandum decision on November 20, 2024, granting Respondent's motion to dismiss on all grounds. The habeas court found that four of Guzman's grounds for relief were barred by res judicata as they were decided, or could have been raised and decided, in the direct appeal. As to Guzman's grounds relating to Duffy's alleged ineffective assistance of counsel, the court found that four of these claims were either speculative or that Guzman failed to show counsel's performance was deficient and/or that he was prejudiced by such performance. With respect to Guzman's ineffective assistance claim involving Duffy's failure to

seek dismissal based on an alleged violation of Guzman's speedy trial right, the court balanced the four factors outlined in *Barker v. Wingo*, 407 U.S. 514 (1972) and determined that they weighed in favor of the State. Regarding Guzman's remaining ground alleging actual innocence, the habeas court noted that Guzman's Application did not identify any newly discovered evidence supporting such a claim, and instead relied upon evidence already provided to the jury at trial.[1] The habeas court concluded that Guzman had failed to state a claim upon which relief could be granted and dismissed the entire Application under Rule 12(b)(5). The court further determined there were no appealable issues and, therefore, it did not issue a CPC.

[¶9.]        Guzman then filed a motion for a CPC with this Court pursuant to SDCL 21-27-18.1. In his motion, Guzman argued the habeas court erred by dismissing his Application without an evidentiary hearing or the appointment of counsel. Guzman asserted that two of the claims the court dismissed on res judicata grounds, three of his ineffective assistance of counsel claims, and his actual innocence claim all presented appealable issues. Regarding Guzman's ineffective assistance of counsel claim pertaining to the failure to assert his constitutional right to a speedy trial, Guzman alleged, for the first time, that he had informed each of his trial attorneys of his desire to assert speedy trial right. Concerning his

---

1.    Guzman's actual innocence claim alleged "[t]hat his right to not be deprived of liberty without due process under the Fourteenth Amendment was violated because he is actually innocent of the charges for which he was convicted, based on the victims' lack of physical evidence indicating sexual trauma, and the fact that the victims tested negative for sexually transmitted diseases and Guzman had been diagnosed with gonorrhea at the time of the offenses."

actual innocence claim, Guzman conceded that his Application did not provide new evidence. Instead, he pointed to his allegation in his response to Respondent's motion to dismiss, citing the alleged recantation by one of the victims as the basis for his claim, which he alleged was only discovered "during the interim period between filing the habeas petition . . . and the filing of said" response. He asserted that after filing the Application, his sister informed him that his daughter (one of the victims, although he did not identify which one) "had recently recanted her tale of sexual abuse, denied that it ever happened[,] and claimed that she fabricated the story at the behest of her mother." He contended that this constituted new evidence that supported his actual innocence claim. Guzman stressed that the appointment of counsel was necessary to investigate his actual innocence claim.

[¶10.] After considering Guzman's motion, we issued a CPC authorizing the following four issues for appeal:

> 1. Whether Petitioner was deprived of his Sixth Amendment right to effective counsel because trial counsel did not request a psychiatric evaluation of the victims.
>
> 2. Whether Petitioner was deprived of his Sixth Amendment right to effective counsel because trial counsel did not effectively cross-examine the victims at the second trial.
>
> 3. Whether Petitioner was deprived of his Sixth Amendment right to effective counsel because trial counsel did not move for dismissal of the indictment based upon Petitioner's Sixth Amendment right to a speedy trial.
>
> 4. Whether Petitioner was innocent of the charges for which he was convicted, based solely upon newly discovered evidence.

[¶11.] Additionally, the Court remanded the matter to the habeas court for the appointment of counsel for the purpose of proceeding with the appeal. On

remand, counsel was appointed, and Guzman filed his notice of appeal. In his initial appellate brief, Guzman raises the following issues, which we restate:

1. Whether Guzman was deprived of his Sixth Amendment right to effective counsel because trial counsel did not obtain an expert to evaluate the victims.

2. Whether Guzman was deprived of his Sixth Amendment right to effective counsel because trial counsel caused delays against Guzman's wishes violating his speedy trial right.

3. Whether Guzman was deprived of his Sixth Amendment right to effective counsel because trial counsel was biased against him thus prejudicing him.

4. Whether Guzman's constitutional right to a fair trial was violated because the trial court prohibited Helen Guzman from testifying at trial.

5. Whether Guzman's constitutional right to present a meaningful defense was violated because the trial court prohibited the introduction of evidence it deemed irrelevant.

6. Whether Guzman's sentence is unconstitutionally cruel and unusual.

[¶12.] Of all these issues raised in Guzman's brief, only the first two—involving counsel's failure to obtain a defense expert to evaluate the victims and failure to assert Guzman's speedy trial right—were certified by this Court in our CPC. "We obtain appellate jurisdiction only through the issuance of a certificate for probable cause that provides 'specific showing' for appellate review." *Evans v. Sullivan*, 2024 S.D. 36, ¶ 22 n.5, 9 N.W.3d 490, 498 n.5 (citation omitted). Therefore, we do not consider any of the above issues that are beyond the scope of those we certified.

## Standard of Review

[¶13.]        We review a circuit court's decision granting a motion to dismiss under Rule 12(b)(5) de novo.  *See Siers v. Weber*, 2014 S.D. 51, ¶ 6, 851 N.W.2d 731, 735 (citing *Steiner*, 2011 S.D. 40, ¶ 4, 815 N.W.2d at 551).

## Analysis

### *Standards governing motions to dismiss in habeas cases*

[¶14.]        "A habeas corpus applicant has the initial burden of proof to establish a colorable claim for relief."  *Jenner v. Dooley*, 1999 S.D. 20, ¶ 11, 590 N.W.2d 463, 468 (citation omitted).  We noted in *Jenner* that, because "habeas proceedings are civil in nature, the rules of civil procedure apply to the extent they are not inconsistent with SDCL chapter 21-27."  *Id.* ¶ 13, 590 N.W.2d at 469 (citing SDCL 15-6-81(a)).  We further noted that, as compared to other civil actions, "a habeas petition may be more susceptible to dismissal because the remedy it seeks is limited, being in the nature of a collateral attack on a final judgment."  *Id.* (citations omitted); *see Evans*, 2024 S.D. 36, ¶ 23, 9 N.W.3d at 498−99 (noting that "[h]abeas corpus actions are exceptional in the sense that they represent post-conviction, collateral attacks on otherwise final judgments of conviction").  Thus, we recognized that motions to dismiss under Rule 12(b)(5) "are appropriate to dispose of nonmeritorious applications."  *Jenner*, 1999 S.D. 20, ¶ 13, 590 N.W.2d at 469.

[¶15.]        In *Jenner*, we provided the following guidance for a habeas court's consideration of a Rule 12(b)(5) motion:

> A court may dismiss a habeas corpus petition for failure to state
> a claim under SDCL 15-6-12(b)(5) only if it appears beyond
> doubt that the petition sets forth no facts to support a claim for
> relief.  *See Schlosser v. Norwest Bank South Dakota*, 506 N.W.2d

416, 418 (S.D. 1993). Fact allegations must be viewed in a light most favorable to the petitioner. *Stumes v. Bloomberg*, 1996 S.D. 93, ¶ 6, 551 N.W.2d 590, 592; (citations omitted); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1363, at 656 (1969). A motion to dismiss under § 12(b)(5) challenges the legal sufficiency of the petition. *Stumes*, 1996 S.D. 93, ¶ 6, 551 N.W.2d at 592 (citation omitted); *see also Thompson v. Summers*, 1997 S.D. 103, ¶ 5, 567 N.W.2d 387, 390 (citations omitted). As the United States Supreme Court noted, when a court

> reviews the sufficiency of a complaint, before the reception of any evidence . . . its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

1999 S.D. 20, ¶ 13, 590 N.W.2d at 469 (citation omitted). The Court further provided that:

> To survive a motion to dismiss under § 12(b)(5), an application for habeas corpus must pass a minimum "threshold of plausibility." *Cf. Dellenbach v. Hanks*, 76 F.3d 820, 822–23 (7th Cir. 1996) (applying this standard under federal habeas corpus). If an applicant's allegations are unspecific, conclusory, or speculative, the court may rightfully entertain a motion to dismiss. *See* SDCL 21-27-5 (writ may be denied if it appears from the application itself that no relief can be granted).

*Id.*

[¶16.] When considering the motion to dismiss at issue here, the habeas court, in its memorandum decision, quoted *Hernandez v. Avera Queen of Peace Hospital* and this Court's discussion therein regarding the standards governing

Rule 12(b)(5) dismissals in civil cases, as provided in *Sisney v. Best Inc.*,[2] a non-

habeas case:

> We no longer apply the rule that "a complaint should not be
> dismissed for failure to state a claim unless it appears beyond
> doubt that the plaintiff can prove no set of facts in support of his
> claim which would entitle him to relief." *See Sisney v. Best Inc.*,
> 2008 S.D. 70, ¶ 7, 754 N.W.2d 804, 808, *abrogating Schlosser v.
> Norwest Bank S.D.*, 506 N.W.2d 416, 418 (S.D. 1993). Instead,
> to survive a motion to dismiss under SDCL 15-6-12(b)(5),
> "[f]actual allegations must be enough to raise a right to relief
> above the speculative level. The pleading must contain
> something more than a statement of facts that merely creates a
> suspicion of a legally cognizable right of action on the
> assumption that all the allegations in the complaint are true
> (even if doubtful in fact)." [*Sisney*], 2008 S.D. 70, ¶ 7, 754
> N.W.2d at 808 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.
> 544, 553, 127 S. Ct. 1955, 1964−65, 167 L.Ed.2d 929 (2007))[.]

*Hernandez*, 2016 S.D. 68, ¶ 15, 886 N.W.2d 338, 344−45 (first alteration in original).

The habeas court further recited our explanation in *Hernandez* that,

> "[w]hile a complaint attacked by a Rule 12(b)(5) motion to
> dismiss does not need detailed factual allegations, a plaintiff's
> obligation to provide the 'grounds' of his 'entitlement to relief'
> requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do." The
> rules "contemplate a statement of circumstances, occurrences,
> and events in support of the claim presented." Ultimately, the
> claim must allege facts, which, when taken as true, raise more
> than a speculative right to relief. Furthermore, "where the
> allegations show on the face of the complaint there is some
> insuperable bar to relief, dismissal under Rule 12(b)([5]) is
> appropriate."

---

2.    In *Sisney v. Best Inc.*, 2008 S.D. 70, ¶¶ 7–8, 754 N.W.2d 804, 807–08, we
examined our previous use of the "no set of facts" standard in *Schlosser v.
Norwest Bank South Dakota, N.A.*, 506 N.W.2d 416, 418 (S.D. 1993), which
we noted had originated in the United State Supreme Court's decision in
*Conley v. Gibson*, 355 U.S. 41, 45−46 (1957). However, we recognized that
the United States Supreme Court had since abrogated the *Conley* standard in
*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 562−63 (2007), and we
followed suit. *Sisney*, 2008 S.D. 70, ¶ 7, 754 N.W.2d at 808.

*Id.* at 345 (citation omitted). The habeas court then noted the similar principle set forth in *Jenner* that habeas petitions containing only "unspecific, conclusory, or speculative" allegations are subject to dismissal under Rule 12(b)(5). *See Jenner*, 1999 S.D. 20, ¶ 13, 590 N.W.2d at 469.

[¶17.] Although not raised by Guzman on appeal, Respondent's appellate brief "urges the Court to clarify the proper standard for granting a motion to dismiss a habeas case." Respondent maintains that our general civil Rule 12(b)(5) dismissal standards should apply in habeas proceedings. Respondent requests that we reject the use of the *Schlosser/Jenner* "no set of facts" standard in habeas cases, just as this Court did in *Sisney* for other civil matters.

[¶18.] In Guzman's reply brief, he argues the habeas court applied the wrong standard. He contends the "Court should maintain that *Schlosser/Jenner* be applied to habeas cases." He also asserts, without elaboration, that following *Sisney* "would erect an unprecedented barrier to habeas review and conflict with decades of South Dakota precedent."

[¶19.] Guzman does not explain how elimination of the "no set of facts" standard would significantly alter the way courts assess motions to dismiss in habeas cases. In more recent habeas opinions addressing Rule 12(b)(5) motions, we have quoted the language in *Jenner* that includes the reference to "no set of facts" supporting a claim for relief. However, when considering the claims asserted, we ultimately applied the "minimum threshold of plausibility" standard identified in *Jenner* and determined whether the petitioner's allegations were "unspecific,

conclusory, or speculative." *See, e.g., Steiner*, 2011 S.D. 40, ¶ 11, 815 N.W.2d at 553 and *Riley v. Young*, 2016 S.D. 39, ¶ 8, 879 N.W.2d 108, 112).

[¶20.]     Although we continue to recognize the general principles regarding habeas corpus cases that we identified from *Jenner* above, we take this opportunity to clarify the standard applicable to a Rule 12(b)(5) motion in a habeas case to conform to the standard we apply in other civil cases. In doing so, we will no longer refer to the now-abrogated "no set of facts" language. When considering a motion to dismiss for failure to state a claim under Rule 12(b)(5), a court must "accept the material allegations as true and construe them in a light most favorable to the pleader to determine whether the allegations allow relief." *Total Auctions and Real Est., LLC v. S.D. Dep't of Rev. & Reg.*, 2016 S.D. 95, ¶ 8, 888 N.W.2d 577, 580 (citation omitted). To survive a Rule 12(b)(5) motion, a habeas application "must pass a minimum 'threshold of plausibility.'" *Jenner*, 1999 S.D. 20, ¶ 13, 590 N.W.2d at 469 (citation omitted). "[U]nspecific, conclusory, or speculative" allegations are insufficient. *Id.*; *see also Hernandez*, 2016 S.D. 68, ¶ 15, 886 N.W.2d at 344 (noting that "[t]he pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action" (citation omitted)).

[¶21.]     We further note that, when ruling on a Rule 12(b)(5) motion, depending on the nature of the habeas claims raised, a habeas court may need to consider whether the petitioner has had the assistance of counsel or has requested the appointment of counsel to assist him or her in the habeas proceeding. Unlike in other civil proceedings, in habeas corpus cases our Legislature has provided a statutory right to counsel under certain conditions for indigent petitioners. SDCL

21-27-4.[3] In many instances, the justiciability or merit of habeas claims can or must be assessed solely on the existing underlying record. For other habeas claims, however, a consideration of a Rule 12(b)(5) motion to dismiss may be premature absent the appointment of counsel. For instance, the inability of an indigent incarcerated petitioner to access the existing underlying record or the inability to sufficiently plead facts relating to a potentially plausible claim that are not part of the existing record are factors that should be considered by a habeas court when determining whether the assistance of counsel is necessary to properly investigate and present the issues.

[¶22.] With these standards and principles in mind, we now address Guzman's arguments, or lack thereof, with respect to the issues we certified in our CPC.

### 1. *Ineffective assistance of counsel claims*

[¶23.] An ineffective assistance of counsel claim is examined under *Strickland v. Washington's* two-prong standard:

---

3. SDCL 21-27-4 provides, in part,

> If a person has been committed, detained, imprisoned, or restrained of liberty, under any color or pretense whatever, civil or criminal, and if upon application made in good faith to the court or judge thereof, having jurisdiction, for a writ of habeas corpus, it is satisfactorily shown that the person is without means to prosecute the proceeding, the court or judge shall, if the judge finds that such appointment is necessary to ensure a full, fair, and impartial proceeding, appoint counsel for the indigent person pursuant to chapter 23A-40.

We have held that an application made in "good faith" equates to a non-frivolous application. *State v. Reed*, 2010 S.D. 105, ¶ 13, 793 N.W.2d 63, 67.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Reay v. Young,* 2019 S.D. 63, ¶ 13, 936 N.W.2d 117, 120 (quoting *Strickland*, 466 U.S. 668, 687 (1984)). We may dispose of an ineffective assistance of counsel claim based on a petitioner's failure to meet either prong. *Rodriguez v. Weber*, 2000 S.D. 128, ¶ 29, 617 N.W.2d 132, 142−43. Moreover, prejudice under *Strickland* "requires a showing of 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Neels v. Dooley*, 2022 S.D. 4, ¶ 15, 969 N.W.2d 729, 735 (quoting *Strickland*, 466 U.S. at 694).

### a. *Psychiatric evaluation of victims*

[¶24.]    In his Application, Guzman alleged that Duffy was ineffective for failing "to request that the alleged victims be evaluated and assessed by qualified mental health professionals regarding their psychiatric fitness, competence[,] and mental states." Guzman alleged that this would have been relevant given "children's propensity to be untruthful and to alter, bend[,] or fabricate stories to satisfy an authority figure." The habeas court noted that Guzman's allegation regarding children's propensities was based only on "personal speculation," which was insufficient to survive a Rule 12(b)(5) motion to dismiss. The habeas court also observed that Guzman failed to show the need and justification for such mental

examinations of the victims, as required by this Court's governing precedent. The court concluded that, even if counsel's performance was deficient, Guzman failed to demonstrate he was prejudiced by counsel's failure to request such examinations.

[¶25.]    In our CPC, we certified the issue of "[w]hether Petitioner was deprived of his Sixth Amendment right to effective counsel because trial counsel did not request a psychiatric evaluation of the victims at the second trial." However, in his opening appellate brief, Guzman shifts the focus and offers a more expansive argument, claiming that Duffy was ineffective by not obtaining an expert to contradict the State's experts; by not obtaining a defense expert to evaluate the victims to show that they were coached and "that any of the alleged physical symptoms could have been caused by any other medical condition"; and by not having an expert testify about the reasons for the victims' alleged inconsistent statements. To the extent these arguments tangentially relate to the certified issue, we address them below.

[¶26.]    "Generally, failure to hire an expert is not, per se, error." *Spaniol v. Young*, 2022 S.D. 61, ¶ 26, 981 N.W.2d 396, 404 (citation modified)). Whether "to call (or not to call) an expert is a matter of trial strategy, and this Court will not second guess experienced counsel regarding trial tactics or strategy." *Id.* ¶ 26, 981 N.W.2d at 404−05 (citation modified).

> [W]e have often explained that strategic decisions—including whether to hire an expert—are entitled to a "strong presumption" of reasonableness. Defense lawyers have "limited" time and resources, and so must choose from among "countless" strategic options. Such decisions are particularly difficult because certain tactics carry the risk of "harm[ing] the defense" by undermining credibility with the jury or distracting from more important issues.

*Id.* at 405 (alterations in original) (quoting *Dunn v. Reeves*, 594 U.S. 731, 739 (2021)).

[¶27.]        To obtain a psychological or psychiatric exam of an alleged sex abuse victim, the defense bears "the burden of showing a substantial justification" before the request is granted. *State v. Cates*, 2001 S.D. 99, ¶ 15, 632 N.W.2d 28, 35 (citation omitted). Exams are often requested to detect a victim's "mental delusions that would distort the victim's perceptions, thus casting doubt on credibility." *Id.* (citation omitted). "Inconsistency in testimony alone will not establish a suggestion of mental delusion." *Id.* "An unsupported assertion that the proposed interview would be useful to the defense is plainly inadequate." *State v. Osgood*, 2003 S.D. 87, ¶ 13, 667 N.W.2d 687, 691–92.

[¶28.]        In his Application and when responding to the motion to dismiss, Guzman did not provide any substantial justification for a psychiatric examination of the named victims and relied upon mere speculation that such examinations of the victims would have been granted and would have changed the result of the trial. Based on our review of the trial record, even if Guzman had been appointed counsel before the habeas court considered the motion to dismiss, he could not have met this burden. Prior to trial, the victims' Department of Social Services (DSS), counseling, and school records were produced for an in-camera review, and the trial court granted defense counsel's request to have access to the records relevant to the issues being tried, subject to a protective order. These records included psychiatric evaluations conducted on N.G. and L.G. in December 2018. On appeal, and with the assistance of appointed appellate counsel, Guzman has not identified anything

in the records before the trial court that would have justified an order requiring *additional* psychiatric examinations of these victims.

[¶29.] Instead, Guzman's appellate argument focuses on the possibility that the victims were coached to provide certain incriminating answers during their forensic interviews. Guzman notes that during the first trial, which resulted in a hung jury, the defense called an expert who testified regarding proper forensic interview methods and pitfalls of the State's experts, but that expert was not called in the second trial.

[¶30.] What Guzman fails to mention is that during his second trial, the jury heard Duffy thoroughly cross-examine the State's expert witnesses on these same topics. Expert Hollie Strand's testimony on cross-examination revealed the same possible pitfalls of certain forensic interview techniques that can lead to fabrication as referenced by the defense expert in the first trial. The State's expert, Tifanie Petro, who interviewed the victims here, also acknowledged circumstances in forensic interviews that may cast doubt on allegations made in such interviews.

[¶31.] Given the existing record, the habeas court did not err in dismissing this ineffective assistance claim because there is no reasonable probability that counsel's failure to request additional psychiatric examinations of the victims or to present testimony from a defense expert that was largely presented by the State's expert witnesses would have altered the outcome of the trial.

b. *Effective cross-examination of the victims*

[¶32.] In his Application, Guzman argued Duffy was ineffective by "failing to exploit inconsistencies and thoroughly question the victim's [sic] about said

inconsistencies," referring to the victims' testimony at the second trial compared to the first. We certified the issue of "[w]hether [Guzman] was deprived of his Sixth Amendment right to effective counsel because trial counsel did not effectively cross-examine the victims at the second trial."

[¶33.] However, Guzman, now with the assistance of appointed counsel who had access to the entire underlying record, failed to raise this issue and present argument in his initial appellate brief. We have previously held that when a habeas petitioner fails to argue a certified question it is deemed abandoned.[4] *See Evans*, 2024 S.D. 36, ¶ 44 n.11, 9 N.W.3d at 504 n.11 (noting that habeas petitioner abandoned claim that was raised in certificate of probable cause but not argued in his brief). We therefore decline to consider this issue.

        c.     *Speedy trial right*

[¶34.] In his Application, Guzman asserted that Duffy was ineffective by failing to move for dismissal because of an alleged violation of Guzman's Sixth Amendment right to a speedy trial. Guzman was charged in March 2018, had his first trial in January 2020, which resulted in a hung jury and mistrial, and his second trial was held in April 2021. Guzman argued that because this delay was

---

4.     In his reply brief, Guzman refers, for the first time, to his trial counsel's inadequate cross-examination of witnesses. But rather than identifying specific inconsistencies that were not addressed on cross, Guzman instead refers to statements his counsel made in closing argument that suggest counsel was biased against him. This is an entirely different claim that was not certified for appeal, and we generally decline to consider arguments raised for the first time in an appellant's reply brief. *See State v. Holy*, 2025 S.D. 19, ¶ 26, 19 N.W.3d 529, 535 (declining to consider an argument first made by appellant in a reply brief).

more than one year, it was presumptively prejudicial, citing *State v. Karlen*, 1999 S.D. 12, 589 N.W.2d 594.

[¶35.]     The habeas court evaluated this claim by analyzing the *Barker* factors for assessing whether an accused's right to a speedy trial is violated: "(1) The length of the delay; (2) the reason for the delay; (3) whether the accused asserted the right [for a speedy trial]; and (4) whether the accused was prejudiced by the delay." *State v. Jones*, 521 N.W.2d 662, 668 (S.D. 1994) (citing *Barker*, 407 U.S. at 530). The habeas court determined that the length of delay (beyond one year) was enough to trigger judicial review, but this did not weigh in favor of either party. On the second factor, the habeas court noted that defense counsel made several pretrial motions that delayed the proceedings. This included Winter's motion to withdraw and Duffy's motion to continue the second trial due to his appointment mere weeks before the trial was scheduled to begin. The habeas court further noted that very little time (approximately one month) was attributed to the State for its motion to continue an evidentiary hearing. The habeas court thus concluded that all the delays attributable to the defense resulted in this second factor weighing strongly in favor of the State. The habeas court also determined that the third factor, whether Guzman had asserted his speedy trial right in the criminal case, weighed in favor of the State because nowhere in the record did Guzman assert his right to a speedy trial. Lastly, the habeas court considered the fourth factor, whether Guzman was prejudiced by the delay. The court observed that, other than his continued detention, Guzman had not identified any specific prejudice relating to an impairment of his defense. However, due to the thirty-seven-month delay, the court

concluded that the fourth factor weighed slightly in Guzman's favor. In totality, the court found the factors, on balance, weighed in favor of the State. Consequently, the habeas court determined Guzman failed to demonstrate that defense counsel's performance was deficient under *Strickland*.

[¶36.] After the habeas court rejected this claim, Guzman asserted, for the first time in his motion to this Court for a CPC on this issue, that although he "never informed the trial court of his desire to assert his speedy trial rights, [he] did inform trial counsel, both Mr. Winter and later Mr. Duffy of that desire." In his appellate brief, Guzman notes that Duffy made two motions to continue the trial, but he claims that he told Duffy he did not consent to continuing the trial. These self-serving claims that Guzman allegedly did not consent to his counsel's requests for continuances were not raised before the trial court or the habeas court. Moreover, these are not the sort of factual claims that required the appointment of habeas counsel to properly present them. We therefore decline to consider these newly asserted claims presented for the first time on appeal. *See State v. Holy*, 2025 S.D. 19, ¶ 26, 19 N.W.3d 529, 535. We nevertheless consider Guzman's claim that his trial counsel was deficient by not moving to dismiss the indictment, and whether there is a reasonable probability that the trial court would have granted such a motion, had it been made.[5]

---

5.     It appears from the habeas court's analysis that it considered Guzman's claim to be a freestanding allegation that his Sixth Amendment right to a speedy trial had been violated as well as an ineffective assistance of counsel claim. We address only whether Guzman presented a plausible, ineffective assistance of counsel claim as to this issue.

[¶37.]      "The Sixth Amendment of the United States Constitution and Article VI, § 7 of the South Dakota Constitution guarantee a defendant the right to a speedy trial." *Karlen*, 1999 S.D. 12, ¶ 17, 589 N.W.2d at 599 (citing *Jones*, 521 N.W.2d at 666). When considering Guzman's ineffective assistance claim, we examine the four *Barker* factors as applied to the existing record. "None of these four factors [is] 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial.'" *Jones*, 521 N.W.2d at 668 (quoting *Barker*, 407 U.S. at 533).

[¶38.]      Regarding the first factor, "[t]his Court has found delays of more than one year to be presumptively prejudicial." *Karlen*, 1999 S.D. 12, ¶ 20, 589 N.W.2d at 599 (collecting cases). In Guzman's case, he was first indicted in March 2018, had his first trial in January 2020, and had a second trial in April 2021. While the three-year delay here is presumptively prejudicial, this serves only to trigger further analysis. *See State v. Goodroad*, 521 N.W.2d 433, 437 (S.D. 1994)) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)). A presumptively prejudicial delay "cannot alone carry a Sixth Amendment claim" without additional supporting factors. *Jones*, 521 N.W.2d at 668 (quoting *Doggett*, 505 U.S. at 656). Thus, we consider how the trial court would have evaluated the remaining *Barker* factors if a motion to dismiss had been presented.

[¶39.]      The second factor examines the reason for the delay.

> [D]ifferent weights should be assigned to different reasons [for delay]. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate

> responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* at 669 (alterations in original) (quoting *Barker*, 407 U.S. at 531). "In contrast, delay caused by the defense weighs against the defendant[.]" *Vermont v. Brillon*, 556 U.S. 81, 90 (2009); *see Goodroad*, 521 N.W.2d at 441 (finding no violation of speedy trial right, in part because "the majority of the delay was attributable to" the defendant).

[¶40.]       In his Application and on appeal, Guzman does not assert the delay in his prosecution was due to the State's attempt to hamper his defense or its negligence in bringing the case forward. And based on our review of the record, there is no indication that this occurred. We note that this case involved highly contested pretrial evidentiary rulings and a lengthy jury trial ending in a hung jury that resulted in the scheduling of a retrial, as well as Guzman's change in representation shortly before the second trial. With respect to the latter, Winter's withdrawal in late April 2020 and Duffy's appointment in early May occurred shortly before the second trial, which was scheduled for July 13. After Duffy's appointment, transcripts from the first jury trial were completed and Duffy sought, and received, a continuance of the trial date, because he needed more time to become acquainted with the case before the second trial. The trial was then rescheduled for January 2021.

[¶41.]       Additionally, aside from the time attributable to Winter's motion to withdraw and the appointment of Duffy, a significant amount of delay was due to defense motion practice leading up to both trials. Before the first trial, the defense

filed numerous motions, as well as objections to the State's proposed evidence, necessitating briefing, evidentiary hearings, and decisions by the trial court. After Duffy was appointed to represent Guzman for the second trial, he filed additional discovery requests pertaining to the victims' DSS, counseling, and school records, which required time for the production of records and an in-camera review by the trial court. Duffy also filed multiple objections to the State's proffered expert testimony and sought to introduce evidence regarding a forensic interview of a different child of Guzman's regarding events unrelated to the charged offenses which prompted an objection by the State. These evidentiary issues required further briefing and argument by the parties and time for judicial consideration, which, in addition to Duffy's second motion for a continuance of the trial at a hearing held in December 2020, led to the trial being rescheduled to April 2021.

[¶42.]     While the State did request one continuance related to the scheduling of an evidentiary hearing, causing a delay of approximately one month, most of the delay in this case was largely the result of the defense's efforts to prepare for trial or was otherwise attributable to the defense. Therefore, even if, at some point, Duffy would have moved to dismiss based on a speedy trial violation, the second factor would have weighed strongly in the State's favor.

[¶43.]     As to the third factor, an assertion by a defendant that his constitutional right to a speedy trial has been violated "is entitled to strong evidentiary weight in determining whether [he] is being deprived of the right." *Barker*, 407 U.S. at 531–32. A rudimentary application of this factor to a scenario in which Guzman's counsel had asserted Guzman's right to a speedy trial in

conjunction with a motion to dismiss would ordinarily weigh in favor of Guzman. However, given the circumstances presented here—a hung jury resulting in a mistrial followed by defense counsel's withdrawal and the appointment of new counsel shortly before the rescheduled trial—it is highly unlikely that a court would have granted a motion to dismiss.

[¶44.] Lastly, even if Duffy had moved to dismiss, the fourth *Barker* factor would not have weighed in Guzman's favor. This factor examines prejudice to the defendant as a result of the delay. *Barker*, 407 U.S. at 532. In *Barker*, the Supreme Court identified three interests the right to a speedy trial should protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* The Court further stated that the third interest is the most important "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Likewise, we have recognized that the "more important question" is whether a defendant has "shown how his *defense* was prejudiced by the delay." *State v. Tiegen*, 2008 S.D. 6, ¶ 18, 744 N.W.2d 578, 586 (noting that the defendant did not claim the delay caused defense witness unavailability or evidence loss or degradation). Mere allegations are insufficient to show prejudice. *See State v. Krana*, 272 N.W.2d 75, 78 (S.D. 1978) (finding that the defendant failed to show prejudice due to delay, where he made no showing that a potential witness who was no longer available "had testimony that was important to the case or what the testimony would have been"); *see also United States v. Loud Hawk*, 474 U.S. 302,

315 (1986) (noting that the "possibility of prejudice is not sufficient to support" a speedy trial claim).

[¶45.] Guzman has not asserted that the length of delay impaired his defense, nor has he identified any defense witness whose testimony was impaired or unavailable due to the passage of time. Because Guzman has not alleged any facts that his trial counsel should have asserted to support a claim that the delayed trial impaired his ability to present a defense, the lack of prejudice would have weighed in favor of the State.

[¶46.] For the above reasons, we conclude Guzman has not demonstrated that his trial counsel was deficient for failing to assert his speedy trial right or that there is a reasonable probability that the trial court would have dismissed his indictment even if a motion to dismiss on this basis had been made. Thus, the habeas court did not err in its ruling on this ground.

### 2. *Actual innocence claim*

[¶47.] In his Application, Guzman alleged that he is actually innocent of the charges for which he was convicted. His claim rested upon evidence that was presented at his second trial, including the fact that the victims' medical examinations showed no evidence of physical trauma and that the victims tested negative for sexually transmitted diseases, even though Guzman had been diagnosed with gonorrhea at the time of the offenses. The habeas court rejected the actual innocence claim, ruling that the evidence Guzman cited in his Application

was not new, but merely "reiterated evidence that was supplied to the jury for their consideration at trial."[6]

[¶48.]       Guzman, in his motion for a CPC, acknowledged that his initial Application did not present any new evidence; he relied instead on his allegation, presented to the habeas court in his response to Respondent's motion to dismiss, regarding an alleged recantation by his daughter as the basis for his claim. However, although we issued a CPC on the issue of "whether [Guzman] was innocent of the charges for which he was convicted, based solely on newly discovered evidence," Guzman's initial appellate brief, filed by his appointed counsel, did not include this claim as an issue to be decided on appeal, nor did it contain *any* argument or authority regarding the habeas court's dismissal of his actual innocence claim. We therefore deem the issue abandoned and do not consider it.[7]

---

6. The habeas court first noted that a freestanding claim of actual innocence is generally not recognized as a ground for habeas relief, but that such a claim may provide a basis for habeas review under SDCL 21-27-5.1. That statute permits a habeas court to grant a habeas petitioner leave to file a second or subsequent application if the petitioner "identifies newly discovered evidence" that would establish "by clear and convincing evidence that no reasonable fact finder would have found the [petitioner] guilty[.]" Although the court acknowledged the Application was not a "second or subsequent" petition, the court assumed, for the sake of argument, that the statute applied but determined that Guzman's claims, as presented in the Application, did not provide a basis for relief. Because we deem this issue abandoned, we do not opine on whether the habeas court could address the merits of Guzman's freestanding actual innocence claim.

7. The dissent refers to statements Guzman made in his reply brief regarding an actual innocence claim, but these statements were made only after the State pointed out that he had abandoned this claim by failing to make any arguments related to it in his initial brief. As noted above, we decline to consider these untimely arguments, raised for the first time in a reply brief. *See Holy*, 2025 S.D. 19, ¶ 26, 19 N.W.3d at 535.

*See Evans*, 2024 S.D. 36, ¶ 44 n.11, 9 N.W.3d at 504 n.11; *see also Giesen v. Giesen*, 2018 S.D. 36, ¶ 23, 911 N.W.2d 750, 756 (holding that "an assignment of error" that was presented in a notice of review but "not briefed and argued is deemed abandoned" (citation modified)).

**Conclusion**

[¶49.]     For all the foregoing reasons, we affirm the habeas court's dismissal of Guzman's request for habeas corpus relief as to the issues certified and raised by Guzman in this appeal.

[¶50.]     JENSEN, Chief Justice, and SALTER and MYREN, Justices, concur.

[¶51.]     KERN, Retired Justice, concurs in part and dissents in part.

[¶52.]     KERN, Retired Justice, sitting for GUSINSKY, Justice, who deemed himself disqualified and did not participate.

KERN, Retired Justice (concurring in part and dissenting in part).

[¶53.]     I respectfully dissent from this Court's holding regarding the habeas court's treatment of Theodore Guzman's habeas corpus application. I agree with the majority's decision affirming dismissal of Guzman's ineffective assistance of counsel claims regarding counsel's decision not to hire a psychiatric evaluation of the victims and counsel's failure to move for dismissal based on Guzman's speedy trial rights. However, I believe the Court should exercise its discretion to consider Guzman's actual innocence and ineffective assistance of counsel on cross-examination claims, and in doing so, should also consider whether the habeas court erred in failing to appoint counsel to represent Guzman in his habeas proceeding. To fully explain my reasoning, certain facts are particularly significant.

[¶54.] It is important to note that Guzman's conviction at issue here resulted in Guzman receiving three consecutive life sentences plus fifteen years in the state penitentiary. This first and only attempted habeas petition was filed by Guzman in February 2023, acting pro se. In his habeas petition, Guzman alleged ten grounds for relief, and at the same time, applied for court-appointed counsel. The State moved to dismiss Guzman's habeas petition pursuant to Rule 12(b)(5) in March 2023, arguing the majority of Guzman's claims failed "to meet the minimum threshold of plausibility" and that two of the ten claims were barred by res judicata. Because the habeas court had not ruled on his request for appointed counsel, Guzman was forced to respond to the motion to dismiss pro se. In his response, Guzman asserted: "it was recently learned that at least one victim has recanted her claim of abuse and admitted she lied at the behest of her mother, to a third party." Guzman claimed that due to his incarceration he could not verify the claims, and he again requested that counsel be appointed. *Ten months* after filing his habeas application, Guzman inquired about the status of his request for court-appointed counsel via a letter to the habeas court. In that letter, Guzman also stated that if the court appointed counsel for him, the grounds for his habeas application could be fully investigated.

[¶55.] Without ever addressing whether to appoint counsel for Guzman's habeas claims or holding an evidentiary hearing, the habeas court granted the State's motion to dismiss by memorandum decision dated November 20, 2024. Among other findings, the court noted that in regard to his claim of actual innocence, Guzman "failed to identify any newly discovered evidence, let alone

evidence that 'if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the applicant guilty of the underlying offense.'" In so ruling, however, the habeas court made no mention of the alleged recanted testimony from one of the victims.

[¶56.]     Again proceeding pro se, Guzman moved for issuance of a certificate of probable cause, noting that the habeas court dismissed his habeas application without appointing counsel, receiving evidence, or conducting an evidentiary hearing. Guzman asserted specifically that there was authority indicating the court erred in refusing to appoint counsel to assist him.

[¶57.]     While denial of the application for court appointed counsel was not one of the enumerated issues contained within this Court's certificate of probable cause, such issue is intertwined with Guzman's actual innocence claim. The majority does not address the propriety of the court's denial of appointment of counsel and it concludes that Guzman's actual innocence claim was abandoned because Guzman failed to address the issue in his initial brief.

[¶58.]     Guzman's actual innocence claim was, however, addressed in his reply brief and the Court has the discretion to consider this argument. *See In re Dissolution of Healy Ranch, Inc.*, 2026 S.D. 15, ¶ 73, 32 N.W.3d 721, 745 (exercising the Court's discretion to consider issue raised for first time in a reply brief, noting the importance of the issue). In response to the State's argument on this issue, Guzman argued:

> The habeas court dismissed Mr. Guzman's claim of actual
> innocence, ruling that he had failed to identify any newly

> discovered evidence. However, no hearing was held on the
> application, so there was no ability to present any testimony or
> other evidence regarding newly discovered evidence.
>
> * * *
>
> Dismissal at the pleading stage precluded any factual inquiry
> into the reliability of this evidence. Credibility and
> corroboration cannot be resolved on paper.

[¶59.] This argument made in Guzman's brief makes evident the habeas court's error in failing to appoint counsel to represent Guzman in his habeas proceeding and then dismissing his case on the pleadings without an evidentiary hearing. Had counsel been appointed for Guzman, an investigation could have been conducted, the witness who allegedly recanted could have been interviewed, and additional evidence could have been discovered. Then, if such evidence was still lacking, dismissal based on the merits, rather than on the pleadings, may have been appropriate. But instead, Guzman was hamstrung by the habeas court's refusal to appoint counsel to represent him to develop and prepare his claims.

[¶60.] In *State v. Reed*, the Court addressed an indigent prisoner's right to appointed habeas counsel, stating that while there exists no *constitutional* right to such counsel, a *statutory* right exists pursuant to SDCL 21-27-4. 2010 S.D. 105, ¶ 11, 793 N.W.2d 63, 66 (per curiam). This statute provides in relevant part:

> If a person has been . . . imprisoned, . . . and if upon application
> *made in good faith* to the court or judge thereof, having
> jurisdiction, for a writ of habeas corpus, it is satisfactorily shown
> that the person is without means to prosecute the proceeding,
> the court or judge *shall*, if the judge finds that such appointment
> is necessary to ensure a full, fair, and impartial proceeding,
> appoint counsel for the indigent person.

SDCL 21-27-4 (emphasis added). We held in *Reed* that good faith requires that the habeas application allege "grounds for habeas relief that are not frivolous." 2010 S.D. 105, ¶ 13, 793 N.W.2d at 67. Appointment of counsel for a habeas petition is at the habeas court's discretion, and this Court reviews that decision for an abuse of discretion. *Id.* ¶ 14. In my view, the habeas court abused its discretion in failing to appoint counsel and in dismissing Guzman's habeas petition.

[¶61.] I agree with the majority's clarifications regarding the appropriate standard of review for Rule 12(b)(5) challenges to habeas applications, and in particular, its recognition of the difficulties and inequities that pro se applicants face in drafting a response to a Rule 12(b)(5) motion to dismiss. *See supra*, ¶ 21. As the majority notes, Guzman's habeas application need only meet a "minimum threshold of plausibility" and no longer should the courts determine whether a habeas petitioner could "ultimately prevail." *Jenner v. Dooley*, 1999 S.D. 20, ¶ 13, 590 N.W.2d 463, 469 (citation omitted). Further, to survive a motion to dismiss, the petition need not contain "detailed factual allegations." *Hernandez v. Avera Queen of Peace Hosp.*, 2016 S.D. 68, ¶ 15, 886 N.W.2d 338, 344−45 (quoting *Sisney v. State*, 2008 S.D. 71, ¶ 8, 754 N.W.2d, 639, 643).

[¶62.] Indeed, it may appear on the face of the pleadings that a recovery is "very remote and unlikely," but the petitioner may nevertheless be "entitled to offer evidence to support the claims." *Jenner*, 1999 S.D. 20, ¶ 13, 590 N.W.2d at 469. This is especially true when the initial habeas application is filed pro se. The majority recognizes the imbalance of procedural power facing pro se habeas applicants by acknowledging that "a habeas court may need to consider whether the

petitioner has had the assistance of counsel or has requested the appointment of counsel to assist him in the habeas proceeding" because of the statutory right to counsel for indigent petitioners. *See supra*, ¶ 21. The majority further acknowledges that "consideration of a Rule 12(b)(5) motion to dismiss *may be premature* absent the appointment of counsel," even describing circumstances very similar to the present as potentially constituting a premature dismissal:

> For instance, the inability of an indigent incarcerated petitioner to access the existing underlying record or the inability to sufficiently plead facts relating to a potentially plausible claim that are not part of the existing record are factors that should be considered by a habeas court when determining whether the assistance of counsel is necessary to properly investigate and present the issues.

*See id.* Nevertheless, the majority concludes that the habeas court did not err in granting the State's motion to dismiss, and in doing so, disregards the fact that the circuit court also refused to appoint counsel to assist Guzman.

[¶63.] In applying the standards applicable to a Rule 12(b)(5) motion, it is evident that Guzman stated claims that are plausible. Even without the benefit of appointed counsel, Guzman's actual innocence claim meets this rather low threshold, and if the recantation testimony were proven true, that fact would "raise more than a speculative right to relief." *Id.* Even so, Guzman's ability to plead facts sufficient to state a plausible claim was hampered by his inability to access the underlying record and investigate facts to substantiate his actual innocence claim, including the recantation testimony from one of the victims. *See McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997) (The Eighth Circuit "has identified several factors to guide a district court when it evaluates whether a petitioner needs court

appointed counsel. These include the factual and legal complexity of the case, and the petitioner's ability both to investigate and to articulate his claims without court appointed counsel."). Appointed counsel would have had a multitude of investigative tools at their disposal, including a private investigator and the ability to conduct discovery.

[¶64.] The habeas court's error in not appointing counsel also affected Guzman's ineffective assistance of counsel claim relating to the cross-examination issue, which the majority concludes was waived. Without counsel, there was no evidentiary hearing that could have fleshed out the merits of this argument, and Guzman was without the ability to question his trial counsel's tactics or strategies. Instead, Guzman was left to infer, based on the existing record, why his trial counsel did or did not take certain actions. Counsel should have been appointed and an evidentiary hearing held, thus generating a record appropriate for appellate review. *See Satter v. Class*, 976 F. Supp. 879, 885 (D.S.D. 1997) (stating that "[i]f the court conducts an evidentiary hearing, the interests of justice require the court to appoint counsel").

[¶65.] Without the appointment of counsel for a habeas petitioner, the circuit courts are left to rely on pro se pleadings and a record that cannot be explained by the parties involved. This truncated review based on a woefully lacking record inevitably results in successive claims, petitions, and appeals. *See Roach v. Bennett*, 392 F.2d 743, 748 (8th Cir. 1968) (noting that with "competent counsel acting on a petitioners' behalf[,] future repetitive claims and petitions may well be obviated" and stating " Counsel can amend the petition and incorporate all possible

grounds for one hearing, and thereby avoid multiple hearings"). Finally, the obvious advantage of appointed counsel and the resultant full and fair hearing benefits not only the habeas petitioner such as Guzman and the circuit court, but it also aids this Court and the federal courts' review by ensuring the existence of a complete and contemporaneous record. Without such a record, the Court is left to analyze the merits of petitioners' undeveloped pro se claims from the underlying trial transcript, a task more appropriately performed by reviewing the transcript from a full, fair, and impartial evidentiary hearing on petitioner's well-developed habeas claims.

[¶66.] In short, the standards applicable to a motion to dismiss a habeas petition—a minimum threshold of plausibility—must be applied contextually. In assessing the sufficiency of Guzman's habeas petition, we must account for Guzman's disparate access to the record, his inability to investigate the recanted victim testimony, and his limited knowledge as a nonlawyer of the rules of pleading and habeas procedures. The habeas court's and this Court's premature consideration of the plausibility of Guzman's claims despite these admitted limitations transforms a procedural hurdle into something more. I would reverse and remand for the habeas court to appoint counsel for Guzman with leave to amend his petition, if requested, to pursue his actual innocence and ineffective assistance of counsel claims. A full, fair, and impartial review demands no less.